## 𝕽ichmond.

# CHESAPEAKE AND OHIO RY. CO. v. AMERICAN EXCHANGE BANK.

January 16, 1896.

1. PLEADING—*Demurrer or Replication to Plea—Effect of Section 3264 of Code—Case at Bar.*—A plaintiff may demur or reply to defendant's plea, but he cannot do both.   Section 3264 applies to pleas by the defendant, but not to subsequent stages of the pleading.   In the case at bar the plaintiff demurred to the defendant's plea in abatement, and the demurrer being overruled, he replied to the plea, and on the issue thus made there was verdict and judgment for the plaintiff.   Under these circumstances the demurrer must be considered as having been waived or withdrawn in the trial court, and cannot be insisted on in the appellate court.

2. VENUE—*Injury to Stock in Transit—Plea to Jurisdiction of Court.*—An action to recover damages for injury to stock being transported by a common carrier may be brought in any county or city where the injury complained of, or any part thereof, was inflicted, and whether such injury was inflicted solely through the negligence of the defendant, or the plaintiff was guilty of contributory negligence, are questions which can only be tried on the merits of the case, and not on a plea to the jurisdiction of the court.

3. COMMON CARRIER OF LIVE STOCK—*Facilities for Watering and Feeding—Contract of Shipper to Feed and Water.*—Although the contract of a common carrier of live stock stipulates that the owner shall load, feed, water, and unload his stock at his own risk and expense, yet it is the duty of such carrier to furnish suitable and safe facilities for loading and unloading the stock, and also for watering and feeding them while being carried over its line, and a failure to provide such facilities is negligence, for the results of which the carrier is liable, and against which he cannot contract.

4. FOREIGN LAW IMPOSING PENALTY—*Special Injury to Individuals for Violation of Foreign Law—Statutes of United States Enforced in State Court.*—While it is true that one State will not enforce the penal

laws of another State where the action is in the nature of a proceeding in favor of the State whose laws have been violated, yet, if the foreign law imposes a public duty on a defendant, and the plaintiff has suffered special injury by a violation of that duty, he may recover damages therefor of the defendant, in any court having jurisdiction of such matters and over the defendant, even though a penalty be provided for the violation of such duty, payable to the foreign State. Applying this rule, the violation of a statute of the United States which amounts to a civil injury to a plaintiff may be made by him the basis of an action for negligence in a State court.

5. SECTION 4386, REVISED STATUTES OF UNITED STATES, EMBRACES HORSES AND MULES.—Section 4386 of the Revised Statutes of the United States, which forbids any railroad company which carries "cattle, sheep, swine, or other animals" from keeping the same confined in its cars for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water, and feeding, for a period of at least five consecutive hours, is a humane rather than a sanitary regulation, intended to prevent cruelty and injury to animals shipped long distances, and embraces horses, mules, and all animals which may suffer for want of food, water, or rest during such transportation.

6. SECTION 4386, REVISED STATUTES OF UNITED STATES—*Other Accidental Cause—Negligence is Not " An Unavoidable Cause."*—The words " other accidental causes," used. in section 4386, Revised Statutes of the United States, mean "other *unavoidable* accidental causes." An effect attributable to the negligence of the common carrier is not an unavoidable cause.

Error to a judgment of the Circuit Court of the city of Lynchburg, rendered May 16, 1892, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Kirkpatrick & Blackford, William J. Robertson,* and *Henry T. Wickham,* for the plaintiff in error.

*R. G. H. Kean* and *Ford & Ford,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a writ of error to the judgment of the Circuit Court of the city of Lynchburg in an action on the case instituted by the American Exchange Bank, for the benefit of T. F. Jamison & Co., against the Chesapeake and Ohio Railway Company, for damage alleged to have been done to two car-loads of horses and mules whilst being transported over the defendant's line of road.

The defendant filed a plea to the jurisdiction of the court. To this plea the plaintiff demurred, but the court overruled its demurrer, and it then filed a special replication to the plea, upon which issue was joined and a trial was had by a jury empaneled to try that issue, and a verdict rendered in favor of the plaintiff.

After overruling a motion of the defendant to set aside this verdict because contrary to the evidence, the court rendered judgment upon it, and proceeded to try the case upon its merits. Upon that trial a verdict and judgment were rendered in favor of the plaintiff.

The first assignment of error is based upon the action of the court in overruling the motion to set aside the verdict and grant a new trial on the issue raised by the plea in abatement to the jurisdiction of the court, because the verdict was contrary to the evidence. The plaintiff, by his counsel, insists that the verdict is sustained by the evidence, but whether it is or not, he contends, is immaterial, as the defendant's plea to the jurisdiction is fatally defective, and the demurrer to it should have been sustained.

We do not think that the demurrer to the plea can be considered here. The plaintiff had the right to demur or reply to the plea, but he had no right to do both. The common law did not allow a party to demur and plead to the same matter. This rule has been changed by the statute so as to

allow a defendant to " plead as many several matters, whether of law or fact, as he shall think necessary." Code 1887, sec. 3264.

But as to subsequent stages of the pleading, there has been no change in the common law. The plaintiff can make one answer, either of law or of fact, but no more, to each plea. *Lang* v. *Lewis*, 1 Rand. 277; 4 Minor's Inst. 166–7 (3d ed.) To escape this inconvenience in the replication and subsequent stages of the pleading, the practice is to demur, if the party desires to do so, and, if the demurrer be overruled, to obtain leave from the court (which is granted as a matter of course) to withdraw the demurrer, and then to answer in point of fact; but, if the demurrer is not withdrawn, no further answer can be made, and the court must give judgment in favor of the defendant on the issue raised by the plea. *Maggort* v. *Hansbarger*, 8 Leigh 532; 4 Minor's Insts. 1167.

In this case, although the record does not show that the demurrer was withdrawn, the court and parties must have so considered it, otherwise the replication could not have been filed and a trial had upon the issue of fact raised by it. The demurrer having been treated in the trial court as waived or withdrawn, it must be so considered here.

The question raised by the plea to the jurisdiction was whether the cause of action sued on, or any part thereof, arose within the jurisdiction of the Circuit Court of the city of Lynchburg.

The evidence introduced upon that issue shows that the injury to the horses complained of was chiefly done between the city of Covington, in the State of Kentucky, and the city of Lynchburg, in this State. But we think there was evidence before the jury showing that a part of the injury was done after the horses arrived at Lynchburg.

It appears that when the train upon which the horses were shipped reached that point they were in such condition that

it was agreed between the parties that they might be taken from the train, although they were billed to Danville, Va. In unloading them the evidence tends to show that one of the horses was crowded or pushed off of a narrow platform, over which they had to pass in going from the cars to the street, and one of its knee-joints so fractured that it caused lock-jaw, from which the horse died.

. The jury were justified in believing that the injury to this horse was caused in Lynchburg. Whether the injury was caused, as the plaintiff contends, by reason of the failure of the defendant to provide suitable and safe facilities for unloading the horses there, or whether, as the defendant insists, the facilities for unloading were suitable and safe, and, if they were not, the plaintiff was guilty of contributory negligence, so as to prevent his recovery, were questions to be tried upon the merits of the case, and not upon the plea to the jurisdiction of the court.

The court, we think, properly overruled the motion of the defendant to set aside the verdict of the jury in favor of the plaintiff upon the plea to the jurisdiction.

The second assignment of error is that the court erred in not setting aside the verdict of the jury upon the merits.

The evidence of the plaintiff (and it is upon that evidence that the case must be considered here, where there is any conflict) shows that the horses were seriously injured whilst they were being carried over the defendant's line of road, and that the damages which were recovered are not more than the plaintiff was entitled to recover if the defendant was liable for the injuries complained of.

The contract under which the horses and mules were shipped provided that, in consideration of a reduced rate of freight, the defendant was not to be held responsible for any loss or damage which might occur in loading, forwarding, or unloading the stock, for the want of feed or water, or for any

other cause incident to railroad transportation, except for fraud or gross negligence in forwarding the particular cars in which the stock was loaded. It further provided that the plaintiff should load and unload the stock, and feed and water them, at its own risk and expense.

Although the contract by which the plaintiff undertook to load, feed, water, and unload its stock at its own risk and expense may have been a valid and binding contract, it was the duty of the defendant to provide suitable and safe facilities for loading and unloading the stock, and also for watering and feeding them whilst being carried over its line of road. *N. & W. R. R. Co.* v. *Harman & Crockett*, 91 Va. 601; Hutchinson on Carriers, sec. 322*a*.

A failure to provide such facilities is negligence, against which a common carrier is not permitted to contract. Code, sec. 1296; *N. & W. R. R. Co.* v. *Harman & Crockett, supra ; Railroad Co.* v. *Sayers*, 26 Gratt. 328.

The evidence of the plaintiff shows that the horses and mules were not unloaded so that they could be fed, watered, and allowed to rest, from the time they were placed upon the cars at Covington, Kentucky, until they reached Greenbrier, W. Va., a period of more than sixty hours. It further shows that the defendant company refused to allow them to be unloaded during that time.

The defendant endeavored to account for its failure to perform its duty in this respect by proving that the cars upon which the horses and mules were loaded were so built that they could be fed and watered upon the cars. The evidence of the plaintiff shows that neither the agent of the plaintiff, nor the agents of the defendant, understood that the horses and mules were to be fed and watered without being unloaded. On the contrary, the agents of the defendant recognized the fact that it was their duty to allow the horses and mules to be unloaded, fed, watered, and given time to rest.

At Huntington, after the horses had been without food for some thirty-six hours, they were given water upon the cars, and also fed two or three bales of hay during the night, with the express promise that they would be taken to the stock-yards the next morning, where they would be unloaded and fed. This was not done, and the horses had neither food nor water until they reached Greenbrier on Wednesday evening about sun-down.

In addition to the duty imposed upon a common carrier of live stock by the common law, section 4386 of the Revised Statutes of the United States provides that "no railroad company within the United States whose road forms any part of a line of road over which cattle, sheep, swine, or other animals are conveyed from one State to another, or the owners or masters of steam, sailing, or other vessels carrying or transporting cattle, sheep, swine, or other animals from one State to another, shall confine the same in cars, boats, or vessels of any description for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes. In estimating such confinement the time during which the animals have been confined without such rest on connecting roads from which they are received shall be included, it being the intent of this section to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated."

The counsel of the defendant contends that the statute of the United States has no application to this case, and that no damages can be recovered for its violation, even if damages resulted therefrom.

1st. Because the statute does not embrace horses and mules, but applies only to cattle, sheep, swine, and such other animals as are intended for food; that the statute was intended

to secure the people of the country from consuming diseased animal food, and that the statute is restricted to animals used for that purpose.

It is true that the words " horses and mules " are not named in the statute, but the words " other animals " are used, and they are sufficiently comprehensive to embrace horses and mules.

The object of the statute, we think, was to prevent cruelty and injury to animals that were shipped long distances upon cars or boats, by requiring that they should be unloaded, watered, fed, and allowed to rest at stated intervals.   It is a humane rather than a sanitary regulation.   As cattle, sheep, and swine were more generally shipped upon the cars than horses and mules, they were doubtless named, whilst the words " other animals " were added to include all animals that might be shipped in crowded cars or boats, and which would suffer also for the want of food, water, or rest.

There is nothing in the language of the statute in question which would indicate that only animals used for food were intended to be embraced within its provisions.   On the contrary, we think it is clear that all animals which would suffer in like manner with cattle, sheep, and swine for want of food, water, or rest, whilst being shipped long distances, are within its provisions.

2d. The second ground assigned why this statute is not applicable to this case is that one State cannot enforce the penal laws of another State or country.

No principle of law is better settled than this, but we do not think it is in any way involved in this case.   In order to come within the scope of that principle, the action or suit must be in the nature of a proceeding in favor of the State whose laws have been violated.   The Supreme Court of the United States, in the case of. *Wisconsin* v. *The Pelican Ins. Co.*, 122 U. S. 265, Mr. Justice Gray delivering the opinion

of the court, said : " The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits of this State for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue or other municipal laws, and to all judgments for such penalties." This statement of the rule was approved by the Privy Council, in the case of *Huntington* v. *Attrill*, 1 Appeal Cases (L. R. 1892), 150, 157, in the following language: " Their lordships do not hesitate to accept that exposition of the law which, in their opinion, discloses the proper test for ascertaining whether an action is penal within the meaning of the rule. A proceeding, to come within the scope of the rule, must be in the nature of a suit in favor of the State whose law has been infringed." *Huntington* v. *Attrill*, 146 U. S. 657, 681.

Tested by this rule, this is not a penal action, nor is it in the nature of a penal action in favor of the United States. It is merely a civil action to recover damages for injuries done the plaintiff in part by reason of the defendant's failure to perform a duty imposed upon it by an act of Congress. The fact that there is a penalty provided for the violation of the statute, payable to the United States, does not prevent those who have been specially injured by its violation from recovering damages therefor. For where a duty imposed, says Mr. Cooley, in his work on Torts (1st ed.) 654, is obviously meant to be a public duty, and the penalty for its violation is made payable to the State, or to an informer, the right of an individual injured to maintain an action on the case for breach of the duty owing to him is unquestionable.

Sherman & Redfield, in their work on Negligence, sec. 13, say : " The violation of a statute or ordinance regulating the speed of vehicles, horses, or trains, or requiring special signals or warnings to be given upon their approach, or light to be shown, is such a breach of duty as may be made the founda-

tion of an action by any person belonging to the class intended to be protected by such a regulation, provided he is specially injured thereby. The violation of a statute of the United States may be made the basis of an action of negligence in a State court. These principles apply not only where the statute or ordinance discloses that persons violating it shall be liable for any damage sustained by reason of its breach, but also where it contains no such provisions, and simply imposes a penalty, by way of fine or otherwise, for disobedience." Bishop on Non-Contract Law; Comyn's Dig., Action on Statutes (F); *Hayes* v. *Mich. Cent. R. R. Co.*, 111 U. S. 228.

We have no doubt that one of the objects of section 4386 of the Revised Statutes of the United States was to prevent loss to the owners of live stock, which would result from it being carried long distances by common carriers without food, water, and rest. The plaintiff belongs to the class intended to be protected thereby, and has the right to recover from the defendant the damages which were caused, if any, by its violation of the statute, and, having such right, he could bring his action in the State court. "It is difficult," said Mr. Justice Miller, in *Dennick* v. *R. R. Co.*, 103 U. S. 11, 17, 18, " to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is a statutory or common law right. Wherever, by either the common law or the statute law of a State, a right of action has become fixed, and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties."

In the case of the *N. C. & St. L. Ry. Co.* v. *Heggie Bros.*, 86 Ga. 210, it was held that, under section 4386 of the Revised Statutes (the section now under consideration), if a railroad company kept horses on its cars for more than twenty-eight

hours, without unloading them for rest, water, and food, it was negligence *per se;* and that such company was not only liable for the penalty prescribed by the statute, but also for any damage or injury thereby sustained by the owner of the horses.

In *Gray's Adm'r* v. *Mobile Trade Company* (55 Ala.), 28 Am. Rep. 729, it was held that, where a cargo of cotton was received by a carrier for transportation, and was destroyed by fire on the boat, the carrier could not avail himself of an exemption from liability for loss by fire, if he neglected to protect the cotton on the deck of the vessel by a complete and suitable covering of canvas or other suitable material to prevent ignition by sparks, as required under penalty by act of Congress, and this too although the act of Congress had been repealed before the case was tried. *Carroll* v. *Staten Island R. R. Co.* (58 N. Y. 126), 17 Am. Rep. 221, 232–3; *Fort Worth & D. C. Ry. Co.* v. *Daggett* (Texas Sup. Ct.), 28 S. W. Rep. 524.

In addition to the claim for damages caused by and resulting from the failure of the defendant to perform its duty in allowing the stock to be unloaded, fed, watered, and permitted to rest, the plaintiff claims that the defendant did not furnish suitable and safe facilities for unloading the stock at Lynchburg, and for its failure to do so one of the horses had a knee-joint so fractured that it produced lockjaw, from which the horse died. The defendant seems not to have had, in the language of its agent at Lynchburg, "the usual gangway for loading and unloading stock leading from the car to the ground." Its arrangement for unloading stock there was to take them out of the cars on the platform of the depot next to the railroad track, thence through the depot to the opposite side of the depot, to a platform which, according to the plaintiff's evidence, was from three to four feet wide. This platform extended along the side of the depot, sloping gradually down from the door of the depot to the street. The platform

at the highest point is from two to two and one-half feet from
the ground.    One side of the platform was against the depot,
so that stock could not get off of it on that side, but the other
side had no railing to prevent stock from stepping or being
crowded off of it.    The horse which died from lockjaw,
together with a mule, the evidence tended to show, was
crowded, or jumped, off of the platform on its unprotected
side, and received the injury referred to.

The defendant's evidence tends to prove that this platform
had long been used by it for loading and unloading horses,
and no injury had theretofore resulted from its use, and that
it was safe and suitable for that purpose ; that the plaintiff's
agent did not lead his horses and mules out of the car, as he
ought to have done, but allowed some of them to go out
without any one holding them, and was thus guilty of such
contributory negligence as would prevent a recovery, even if
the facilities for unloading were not suitable and safe.

The facilities for unloading were not such as are usually
provided.    The evidence is conflicting.    This was peculiarly a
question for the determination of a jury, and we cannot say
that its verdict upon this point, which was approved by the
trial court, was not supported by the evidence.

The next and last assignment of error .is that the court
failed to instruct the jury that section 4386 of the Revised
Statutes of the United States did not embrace or refer to
horses and mules, but did embrace and refer only to cattle
and other animals intended for food, and erred in giving in
lieu thereof the following instruction, to-wit :

" That if the jury should find for the plaintiff, in estima-
ting its damages they will exclude all such injuries as the said
horses and mules received before they came into the charge
of the defendant company at Covington, Ky. ; and should
estimate and allow such damages to said horses and mules as
they shall find from the evidence to be due to their confine-

ment for a period (if such there was) greater than that pre-
scribed in section 4386 of the Revised Statutes of the United
States, in the cars in which they were brought by the defend-
ant from Covington, Ky., to Lynchburg, Va."

From what has heretofore been said in this opinion, it is
clear that the court properly refused to give an instruction
that horses and mules were not embraced within the pro-
visions of section 4386 of the Revised Statutes of the United
States.

The objection urged to the instruction which was given is
that " the court ought to have left it to the jury to decide,
upon the evidence in the case, whether or not the unloading
was prevented by ' accidental causes,' and whether or not the
horses and mules were carried in cars in which they did and
could have proper food, water, space, and opportunity to rest,
' inasmuch as there would be no liability on the defendant
under the statute if the unloading was prevented from acci-
dental cause, or if the animals were carried in the manner
set forth in section 4388 of the Revised Statutes.' "

There was no evidence whatever tending to show that the
horses and mules of the plaintiff were not unloaded as re-
quired by sec. 4386, because of a " storm or other accidental
cause," as these words have been construed by the courts of
the United States.  In the case of *Newport News & Miss.
Val. Co.* v. *United States*, decided by the Circuit Court of Ap-
peals, and reported in 9 U. S. Circuit Court of Appeals Re-
ports 579, it was held that the carrier, in a criminal prosecu-
tion under that statute for failure to unload stock, must show,
in order to escape the penalty imposed by the statute, not
only that there was in fact a storm, but that with due care he
was prevented, as an unavoidable result of the storm, from
complying with the law.  If the storm is no excuse, said the
court, unless its unavoidable effect was to prevent compliance,
then it follows that no other accidental causes would be an

excuse, unless the cause and its effect would be likewise un-
avoidable. The meaning of the general words " other acci- .
dental causes " must be ascertained by referring to the pre-
ceding special words. The rule " *noscitur a sociis* " is clearly
applicable. A storm is unavoidable in the sense that it can-
not be prevented. " Other accidental causes " must be taken
to mean other unavoidable accidental causes. An effect at-
tributable to the negligence of the appellant is not an un-
avoidable cause.

There is evidence showing that the defendant's train was de-
layed for some hours west of the Ohio river on account of
high water and a wash-out, but there is no evidence tending
to show that for this cause, or because of a storm or other
accidental cause, the defendant was prevented from unloading
the stock for more than sixty hours, and until it had reached
Greenbrier, W. Va. In the case of the *Nashville Railway
Co.* v. *Heggie*, cited above, it was held that the fact that the
stock-yards of the railroad company in that case were on fire
when the train passed Nashville was no sufficient excuse for
not stopping the car five hours there, or at some other station,
as provided for in the statute, so that the stock, after they had
been in the cars twenty-eight consecutive hours, might be un-
loaded, fed, and watered.

Sec. 4388 of the Revised Statutes of the United States
provides, among other things, that " when animals are carried
in cars, boats, or other vessels, in which they can and do have
proper food, water, space, and opportunity for rest, the pro-
visions in regard to their being unloaded shall not apply."

There was evidence tending to show that the cars upon
which the stock was carried from Covington, Ky., were a
superior kind of stock cars, two feet longer than the cars in
which they were carried to Covington, and provided with
racks and troughs in which to feed and water.

If sec. 4388 rendered it unnecessary to unload stock where

Opinion.

they can and do have proper food and water upon the cars, the objection to the instruction would have been valid; but the statute only does away with the requirement to unload when the stock are carried in cars, &c., in which they can and do " have proper food, water, space, and opportunity for rest." There is no evidence tending to show that there was space and opportunity for rest in the cars in which the plaintiff's stock were shipped. In fact, it is evident that forty-three horses and mules carried in two cars, which were only two feet longer than ordinary stock cars, had neither space nor opportunity for rest on the cars.

The instruction, under the evidence of the case, we think, was plainly right.

We are of opinion, therefore, that there is no error in the proceedings of the Circuit Court, and that its judgment should be affirmed.

*Affirmed.*