McKinney v. Trustees of Emory and Henry College, Incorporated.

Absent, Kelly, J.

September 9, 1915.

1. Riparian Rights—*Fouling Waters—Nuisance—Injunction.*—Any use of a stream that materially fouls and adulterates the water, or the deposit or discharge therein of any filth or noxious substance that so far affects the water as to impair its value for ordinary purposes of life, or anything which renders the water less wholesome than when in its ordinary state, or which renders it offensive to taste or smell, or which is naturally calculated to excite disgust in those using the water for the ordinary purposes of life, will constitute a nuisance which a court of equity will enjoin, or for which a lower riparian owner injured thereby is entitled to redress.·

2. Limitation of Actions — *Nuisance — Fouling Waters — When Right of Action Accrues.*—The mere fact that sewage is turned into a stream does not give a right of action. It is only when the quantity becomes great enough to work injury to others that a liability arises. The right of action accrues at the time the injury is done, regardless of the time when the works were completed.

Appeal from a decree of the Circuit Court of Wythe county. Decree for the defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*A Gray Gilmer* and *F. B. Hutton,* for the appellant.

*M. H. Honaker* and *White, Penn & Penn,* for the appellee.

Whittle, J., delivered the opinion of the court.

The material allegations of the bill in this case are as follows: That the plaintiff, Mary B. McKinney, is the owner of 300 acres of land situated in Washington county, Virginia, upon which she and her family reside; that they carry on general farming operations, keeping live stock of various kinds, including milch cows, which renders a supply of pure water essential; that the water supply for the use of the stock and farm is furnished by a small stream, known as Emory creek, which prior to the grievances complained of was pure and uncontaminated; that the defendants, as trustees of Emory and Henry College, Inc., own 250 acres of land lying just west of and above the property of the plaintiff, upon which they have erected an educational institution with all necessary buildings and equipments, including dormitories, lecture rooms, laundries, chemical laboratories, residences, gymnasiums, etc., for the accommodation of the student body and members of the faculty of the college and others; that there are from two hundred to two hundred and fifty students, who together with the faculty use said buildings continuously; that within five years from the institution of this suit the defendants installed a general sewerage system for the use of the college, furnishing the buildings with wash tubs, bath tubs, urinals and closets connected with pipes by means of which the sewage is discharged into Emory creek and defiles the naturally pure water of the stream; that this pollution extends to the premises of the plaintiff and renders the water unfit for the use of live stock and other domestic purposes; that when the creek is flush the contaminated water backs up the spring branches into the springs, from which cause a valuable spring and springhouse that had been constantly in use by the family for years had to be abandoned; that these conditions consti-

tute a nuisance which is a menace to the health and comfort of the family, and seriously affects the operations and market value of the farm; that the defendant is not only befouling the creek with sewage from its own premises, but in addition thereto, for compensation, has granted the privilege to citizens of the adjoining town of Emory and to the Norfolk and Western Railway Company to connect their sewer pipes with its system; all of which doings by the defendants were without the knowledge or consent of the plaintiff.

The bill prays that the defendants may be perpetually enjoined from the pollution of the creek, and that the damages already sustained by the plaintiff may be inquired into and the amount ascertained by a commissioner in chancery.

The allegations of the bill were substantially proved, and the defendants, without seriously controverting the facts, rely on the statute of limitations as a bar to the suit. From a decree dissolving the temporary injunction theretofore granted and dismissing the bill this appeal was allowed.

It appears that with the exception of a sewerage line to the creek from the residence of one of the professors (whose family consisted of five members) no other sewage had been cast into the stream at any time more than five years prior to the bringing of the suit, and the discharge from that source was negligible so far as polluting the waters of the creek is concerned, and inflicted no injury upon the plaintiff. It also appears that what is known as the "Fitting School," a building located half a mile east of the college and an adjunct thereto, was equipped with bath rooms and water closets in the winter of 1907, but these conveniences were not used by the students until March, 1908, within less than five years from the institution of the suit. It moreover appears that plaintiff had

no knowledge of the installation of these sewers until within the statutory period.

Upon the foregoing summary of the pleading and evidence, the right of the plaintiff to injunctive relief, and the liability of the defendants to respond in damages for the injury inflicted is clear, and the narrow question for our determination is, whether or not these rights are barred by the statute of limitations.

*Trevett* v. *Prison Association of Virginia,* 98 Va. 332, 36 S. E. 373, 50 L. R. A. 564, 81 Am. St. Rep. 727, in which the opinion of the court was delivered by Keith, P., is a leading and convincing authority for the principal propositions, and in its essential facts is undistinguishable from the case in judgment.  It was there held: 1. That "The erection of privies for the accommodation of a large number of people, and the discharge, through sewers, of refuse water, urine and excrement into a stream is such a pollution of the stream as entitles a lower riparian owner to recover damages for the injury thereby inflicted.  Privies are *prima facie* nuisances, and even when necessary or indispensable, the persons erecting or using them are liable for all injurious consequences flowing from building or allowing them to remain in such condition as to annoy others in the enjoyment of their property.  2. The natural pollution of water in its flow through populous regions of country cannot, ordinarily, be restrained.  But any use of a stream that materially fouls and adulterates the water, or the deposit or discharge therein of any filth or noxious substance that so far affects the water as to impair its value for the ordinary purposes of life; or anything which renders the water less wholesome than when in its ordinary state, or which renders it offensive to taste or smell, or which is naturally calculated to excite disgust in those using the water for the ordinary purposes of life, will constitute a nuisance which a court

of equity will enjoin, or for which a lower riparian owner injured thereby is entitled to redress."

In 1 Farnham on Waters and Water Rights, p. 641, n. 2, the distinguished author cites this case as authority for the proposition, that "Damages for the pollution of a stream by the discharge therein, through sewers constructed for the purpose, of the refuse water and excrement from wash-tubs, bath-tubs and closets of the buildings of a prison association, in which are quartered several hundred persons, may be recovered by a riparian owner who conducts a profitable dairy and butter business, necessitating a plentiful supply of pure water for his cows, and who also uses the water for domestic purposes." If other authority were needed for the right to redress by one injuriously affected by a private nuisance, it will be found in the recent case of *Face & Son* v. *Cherry, ante* p. 41, 84 S. E. 10, where other decisions of this court are cited.

2. Upon the second proposition, which involves the defense of the statute of limitations, we entertain no doubt that under the facts of this case plaintiff's cause of action accrued when the discharge of sewage into Emory creek was in sufficient quantities to pollute the stream and constitute a nuisance. The opposing contention, that the right attached in 1907, when closets were first installed in the residence of one of the professors, though no injury was thereby inflicted upon the plaintiff, has neither the sanction of reason nor authority.

The Constitution of Virginia, sec. 58, ordains that the General Assembly "shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation." Yet until there is either a taking or damage to the property, the owner has no occasion to invoke the protection of the Constitution.

In 1 Farnham on Waters and Water Rights, section 139, discussing the subject of *Procedure to abate nuisance,* it is said: "Before any right of action accrues to a riparian owner because of the discharge of sewage into a stream, there must be a taking of his property, or the quantity of sewage cast into the stream must be so great as to constitute a nuisance. The mere fact that the municipal corporation has turned its sewage into the water will not give a right of action. This it has a right to do, and it is only when the quantity becomes great enough to work injury to others that its liability arises." Citing *Sayre* v. *Newark,* 58 N. J. Eq. 136, 42 Atl. 1068; *Lillywhite* v. *Trimmer,* 36 L. J. Ch. (N. S.) 530, 16 L. T. (N. S.) 318, 15 Week Rep. 763; *Jacksonville* v. *Doan,* 145 Ill. 23; 33 N. E. 878.

The same is true of private corporations and individuals. Again, in the same section, it is said: "And the injury must be present and not prospective. The consequence of this is that the right of action accrues at the time the injury is done, regardless of the time when the works were completed. But after the cause of action has arisen the action must be brought before the right to maintain it is barred by the statute of limitations." The text is sustained by decisions of courts of high authority cited in notes. That injunction is a proper remedy to abate the nuisance in such case, see *Idem,* sec. 139-b.

This case is readily distinguishable from the class of cases of which *Virginia Hot Springs Co.* v. *McCray,* 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas, 179, is a conspicuous type. In that case the court had to deal with a situation where the pollution of the stream was occasioned by the installation of a completed sewer system, the use of which created a permanent nuisance which destroyed the waters of the stream for all useful purposes. The injury to the lower riparian owner was

*direct* and immediate, and his right of action to recover entire damages necessarily accrued *at once.*

For these reasons the decree appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*