# CIRCUIT COURT OF THE CITY OF NORFOLK

Frank E. Spicer, Sr., et al.

v.

City of Norfolk
and Virginia Elec. & Power Co.

Case No. L96-2856

BY JUDGE EVERETT A. MARTIN, JR.

December 31, 1996

The plaintiffs are owners and an occupant of real estate on the west side of Monticello Avenue in Norfolk. The defendant City of Norfolk owns a 13.4 acre site on the east side of Monticello Avenue (the "Site"), which is directly across that street from the property of the plaintiffs. Virginia Electric & Power Company ("VEPCO") previously owned the southern half of the Site. The southern half of the Site is the former location of a manufactured gas plant which began operations around 1853 and continued operations until 1968. The City purchased the southern half of the Site from VEPCO around December, 1970, and it has owned the entire Site since then. The plaintiffs purchased their property in 1978.

The plaintiffs allege that VEPCO disposed of toxic by-products and wastes from the production of manufactured gas on the Site; that after the City purchased the southern half of the Site, these wastes were uncovered; that the City and VEPCO then investigated the Site and determined that the wastes had contaminated the ground water under the Site and were migrating through the

subterranean waters to the plaintiffs' property; that the City and VEPCO then attempted to remedy the situation by placing a cap on the Site in July of 1995; and that this cap has caused the vapors from the waste to migrate to the ground water below the plaintiffs' property and to emanate up into buildings on the plaintiffs' property. The plaintiffs claim that as a result of the defendants' actions, their property has been contaminated and that the health of their employees and customers is threatened. The plaintiffs claim damages for, among other things, the loss of use and enjoyment of their property and its diminution in value. The motion for judgment is in six counts, nuisance, trespass, negligence and gross negligence, negligent failure to warn, negligence *per se*, and punitive damages. The latter count is only against VEPCO. The defendants have filed demurrers to all the counts of the motion for judgment.

### *Negligent Failure to Warn (Count IV)*

The plaintiffs seem to allege three failings of the defendants as violations of this claimed duty: (1) VEPCO's failure to have warned them of the contamination on the Site, (2) the City's failure to warn them of the contamination when the City discovered it in 1995, and (3) both defendants' failure to warn of their efforts to remedy the condition. The plaintiffs rely on §§ 321, 326, and 370 of the *Restatement (Second) of Torts*. Section 326 suggests no such duty. Sections 321 and 370 do suggest duties to warn, but neither section appears to have been adopted by the Supreme Court of Virginia. The Supreme Court of Virginia has held that the common law requires duties to warn in some circumstances, but the plaintiffs have cited no Virginia case in which such a duty has been declared to exist between adjoining property owners. It is difficult to imagine any court imposing the first duty as it is totally impractical.

Having found no authority to impose the alleged duties on the defendants, their demurrers to Count IV are sustained.

### *Negligence Per Se (Count V)*

The plaintiffs contend the defendants' actions have violated Code of Virginia § 62.1-44.5 (except as otherwise noted, all statutory references are to the Code of Virginia (1950), as amended), which in pertinent part provides:

Except in compliance with a certificate issued by the Board, it shall be unlawful for any person to (i) discharge into state waters ... industrial

wastes ... or any noxious or deleterious substances, or (ii) otherwise alter the ... chemical ... properties of such waters and make them detrimental to the public health ... .

"State waters" include subterranean water. § 62.1-44.3. These statutes are part of the State Water Control Law (the "Act"), § 62.1-44.2 *et seq*. The purpose of the act is stated by § 62.1-44.2:

It is the policy of the Commonwealth of Virginia and the purpose of this law to: (1) protect existing high quality state waters and restore all other state waters to such condition of quality that any such waters will permit all reasonable public uses and will support the propagation and growth of all aquatic life, including game fish, which might reasonably be expected to inhabit them, (2) safeguard the clean waters of the Commonwealth from pollution, (3) prevent any increase in pollution, (4) reduce existing pollution, and (5) promote water resource conservation, management and distribution, and encourage water consumption reduction in order to provide for the health, safety, and welfare of the present and future citizens of the Commonwealth.

The Act was codified by 1946 Acts of Assembly, c. 399, and it did not explicitly create a private right of action. It provided for monetary penalties, Michie's Code § 1514b21, and enforcement by the State Water Control Board (the "Board") by injunction, mandamus, or other appropriate remedy, Michie's Code § 1514b22. It also provided that holding a certificate issued thereunder "shall not constitute a defense in any civil action involving private rights." Michie's Code § 1514b25. The successor statutes to these provisions are §§ 62.1-44.32, 62.1-44.23, and 62.1-44.22. The two latter statutes are substantially similar to their 1946 predecessors.

When the present Code was enacted, the Act was placed in Title 62 as Chapter 2. 1968 Acts of Assembly, c. 659, repealed Title 62 and enacted Title 62.1, and the Act was designated Chapter 3. 1970 Acts of Assembly, c. 638, repealed Chapter 3 and designated the Act as Chapter 3.1.

1973 Acts of Assembly, c. 417, added Article 8, "Discharge of Oil into Waters," to the Act. It was limited to oil refineries and vessels, and its second section, former § 62.1-44.34:2, was the first explicit private right of action created under the Act. The private action was limited to claims for property damage, and subject to limited defenses, it was a strict liability statute. 1990 Acts of Assembly, c. 917, repealed Article 8 and enacted Article 11 as its successor. Present § 62.1-44.34:18 is the successor statute to former § 62.1-

44.34:2, and the private right of action is described in subsections C, E, F, G, and H thereof. The 1990 amendment expanded the private right of action to include claims for personal injury.

1981 Acts of Assembly, c. 596, amended the Act's penalty statute, § 62.1-44.32, to create a limited civil action in favor of political subdivisions to recoup any civil penalties assessed against them because of the acts of the users of its waste water treatment facilities.

Under the maxim *inclusio unius est exclusio alterius*, the creation of the private right of action in former § 62.1-44.34:2, its expansion by present § 62.1-44.34:18, and the limited civil action provided by § 62.1-44.32 are evidence the General Assembly did not intend a general private right of action under the Act. Furthermore, § 62.1-44.22 indicates the Act does not affect private rights of action and holding a certificate under it is not a defense in such actions. Finally, §§ 62.1-44.32 and 62.1-44.23 prescribe penalties for violations and authorize the Board to enforce the Act. "When a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *Vansant and Gusler, Inc. v. Washington*, 245 Va. 356, 360, 429 S.E.2d 31, 33 (1993).

The violation of a statute does not, *ipso facto*, make a party guilty of negligence *per se*. The plaintiff must be within the class of persons for whose benefit or protection the statute was enacted, and the wrong complained of must be a danger the statute was designed to prevent. *Williamson v. The Old Brogue*, 232 Va. 350, 350 S.E.2d 621 (1986); *VEPCO v. Savoy Const. Co.*, 224 Va. 36, 294 S.E.2d 811 (1982). Although the General Assembly declared in § 62.1-44.2 that one of the purposes of the Act was to provide for the health, safety, and welfare of the citizens of the Commonwealth, its primary purpose is the protection of the quality of the state waters. Protection of private property is not listed as a purpose, and with the exception of Article 11, previously discussed, it is an incidental benefit of the Act.

The plaintiffs cite *Chesapeake & Ohio Ry. v. American Exchange Bank*, 92 Va. 495, 23 S.E. 935 (1896), as authority that a statute's lack of an explicit private right of action has no effect on a cause of action for negligence *per se*. In that case, however, the plaintiff was an intended beneficiary of the statute. 92 Va. at 504, 23 S.E. at 937-8.

I therefore conclude there is no private right of action under the Act to seek damages for the injuries the plaintiffs complain of.

*Failure to Give Statutory Notice (Counts I, II, and III)*

The City has demurred to Counts I, II, and III because the plaintiffs have not alleged the required notice under § 8.01-222. The Supreme Court of Virginia held in *Daniel v. City of Richmond*, 199 Va. 490, 100 S.E.2d 763 (1957):

> the present rule in Virginia is that the giving of the required notice is mandatory and is an essential element of plaintiff's case, which he must allege and prove. 199 Va. at 493, 100 S.E.2d at 765.

The motion for judgment did not allege the statutory notice. The demurrer will therefore be sustained to Count III. The statute, however, is limited to actions for negligence. Negligence and nuisance are distinct legal concepts and causes of action, even if negligent acts created the nuisance. *Chapman v. City of Virginia Beach*, 252 Va. 186, 192, 475 S.E.2d 798, 802 (1996). The result should be the same for negligence and trespass. Counsel for the City have cited no case applying the statute to actions for nuisance or trespass. The demurrer will be overruled as to Counts I and II.

As no notice has been alleged, it is premature to decide the sufficiency of notice given by the individual plaintiffs or their right to rely on notice by the corporation.

*Trespass (Count II)*

VEPCO, but not the City, has demurred to the trespass count. The grounds for the demurrer are VEPCO's sale of its part of the Site in 1970, the plaintiffs' acquisition of their property in 1978, and the doctrine of *caveat emptor*. The plaintiffs allege in paragraphs 16 and 23 of the motion for judgment that the cap both defendants placed on the Site has caused the trespass.

A trespass is an unauthorized entry on the property of another resulting in interference with the owner's possessory interest. *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994). Ownership of adjoining property is not necessary for liability in trespass, nor is the sale of adjoining property necessarily a defense to the action. By way of example, A and B are adjoining landowners with B having purchased his land from C. B invites C onto his property. While there, C negligently cuts down a tree which falls onto A's land and damages A's house. Has not C trespassed?

*Nuisance and Negligence (Counts I and III)*

VEPCO has demurred to the negligence and nuisance counts on the ground it no longer owns the site and is protected by the doctrine of *caveat emptor*. The plaintiffs allege VEPCO was negligent in burying the substances on the Site and in placing the cap on the Site. Both VEPCO and the City have demurred on the ground the asphalt cap was installed by an independent contractor.

Whether a person performing work is an employee or independent contractor is a question of fact. *Hadeed v. Medic 24 Ltd.*, 237 Va. 277, 377 S.E.2d 589 (1989). The issue may not be resolved by demurrer here as the plaintiffs have alleged in paragraph 16 of the motion for judgment that the defendants jointly controlled the persons who put the cap on the site. The plaintiffs' other arguments for exceptions to the independent contractor rule need not be now considered.

It appears a person need not own nearby land to be held liable in nuisance. As in the case of trespass, sale of property is not necessarily a defense. The Supreme Court of Virginia has defined a private nuisance as *"the using,* or authorizing the use *of,* one's property, or *anything under one's control,* so as to injuriously affect an owner or occupier of property ... ." *Virginian Ry. v. London,* 114 Va. 334, 344, 76 S.E. 306, 308 (1912) (emphasis added). By way of further example, A and B are adjoining property owners, and there is a stream flowing through their properties. B's land, which he purchased from C, is upstream from A's land. A uses water from the stream for his domestic purposes. B asks C to come onto his property to pump the septic tank. C does so, and while there, C empties the sewage into the stream without B's knowledge. The stream is polluted, and A is temporarily unable to use its water. Would not C be liable to A for nuisance?

Furthermore, if two persons act in concert to create a nuisance, as is alleged in paragraph 16 of the motion for judgment, both are liable to the plaintiff in damages. *See Finley, Inc. v. Waddell,* 207 Va. 602, 608, 151 S.E.2d 347, 352 (1966); *Pulaski Anthracite Coal Co. v. Gibboney Sand Bar Co.,* 110 Va. 444, 66 S.E. 73 (1909). The alleged inability of the plaintiffs to prove which damages were caused by VEPCO and which by the City is a matter for discovery and proof at trial, not demurrer.

In *Phillip Morris v. Emerson,* 235 Va. 380, 368 S.E.2d 268 (1986), the Supreme Court apparently approved an exception to the doctrine of *caveat emptor* as stated in instruction 11. The liability of the former owner under that instruction is predicated on its creation of an artificial condition involving an unreasonable risk of harm to others outside the property, and the former

owner's liability continues until the purchaser discovers the condition and has a reasonable opportunity to take effective precautions against it, or until the purchaser has had a reasonable opportunity to discover and remedy the condition.

The motion for judgment alleges that VEPCO placed substances on the Site that are hazardous and toxic (paragraph 13); that these substances have migrated to the plaintiffs' land (paragraph 14, 20, and 21); that the plaintiffs' land is contaminated and the health and safety of their employees and customers are threatened (paragraph 24); and that VEPCO created "unreasonable hazards and risks to adjoining landowners, including plaintiffs" by burying the substances on the Site (paragraph 39). This is sufficient to allege a cause of action in negligence against VEPCO under *Philip Morris*. Whether the City has had a reasonable opportunity to remedy the condition is a question of fact and thus not appropriate for resolution by demurrer.

In a reply brief, VEPCO asserts that the damages the plaintiffs claim are not "physical harm." I disagree. *Restatement (Second) of Torts*, § 7(3).

VEPCO's demurrer to Counts I and III is overruled.

### Sovereign Immunity (Count III)

The plaintiffs allege in paragraph 37 of the motion for judgment that the City has held the Site for speculation and profit. In the briefs the parties have filed, they have made claims that go beyond the allegations of the motion for judgment. The plaintiffs and VEPCO claim the cap was placed on the Site to build a parking lot and to collect revenue therefrom. The City claims the cap was placed on the Site to correct a dangerous condition and thus to protect the public health. The parties have also made references to evidence taken in a prior federal court case. I believe there are factual questions on this issue that render it inappropriate for resolution on demurrer.

### Punitive Damages (Count VI)

There is, of course, no separate cause of action for punitive damages. VEPCO's demurrer will be sustained on that ground. Whether the plaintiffs will adequately plead claims for punitive damages under their negligence, nuisance, and, perhaps, trespass counts will have to await the filing of an amended motion for judgment.

Counsel for each defendant shall prepare an appropriate order giving the plaintiffs until March 31, 1997, to file an amended motion for judgment.

■■■■■■

March 17, 1997

The plaintiffs claim the defendants' actions have caused the ground water under the Site (as defined in my letter of December 31, 1996) to become contaminated and that the contaminants are migrating to the plaintiffs' property through contaminated ground water and through surface water runoff from storms. The plaintiffs also allege that hazardous vapors and gases that are potentially explosive are migrating from the Site to their property, and that noxious odors are detected intermittently. By amended demurrer, the defendants claim this is insufficient to state a cause of action for trespass to land as there is no entry or interference with the plaintiffs' possession of their property. The amended demurrer will be sustained.

The Supreme Court of Virginia recently stated the requirements of the common law action of trespass *quare clausum fregit* in *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1987):

A trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein ... .

In addition, to recover for trespass to land, a plaintiff must prove an invasion that interfered with the right of exclusive possession of the land, and that was a direct result of some act committed by the defendant. Any physical entry upon the surface of the land constitutes such an invasion, whether the entry is "a walking upon it, flooding it with water, casting objects upon it, or otherwise." W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts*, § 13, at 70 (5th ed. 1984).

In recent years, the courts of many states have modified some of the common law requirements of the trespass action. Most states now require the defendant's entry to have been intentional, negligent, or in the course of some abnormally dangerous activity. That is, an inadvertent non-negligent entry is insufficient. Prosser and Keeton, *op. cit.*, at 68-9; See *Bailey v. S. J. Groves & Sons*, 159 W. Va. 864, 230 S.E.2d 267 (1976). Virginia, however, still follows the ancient common law and allows the action for an entry that is unintentional, accidental, inadvertent, or mistaken. *Cooper v. Horn*, 248 Va. at 423-4, 448 S.E.2d at 407. *Chesapeake & Ohio Ry. v. Greaver*, 110 Va. 350, 355, 66 S.E. 59, 60 (1909).

A second ancient requirement of the action is an invasion that is a direct, and not an indirect, result of an act the defendant committed. Most courts apparently now reject the distinction. Prosser and Keeton, *op. cit.*, at 69.

However, the passage from *Cooper* quoted above shows that Virginia maintains it.

A third requirement has been an entry that constitutes an interference with possession, that is, an invasion of tangible matter. Courts in several states have recently relaxed this requirement by allowing a trespass action for invasions of gases and microscopic particles if (1) the invasion affects an interest in the exclusive possession of property, (2) the act resulting in the invasion was intentional, (3) it was reasonably foreseeable that the act committed could result in an invasion of the plaintiff's possessory interest, and (4) there is substantial damage to the property. The leading case for this is *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979). The case begs the question of how invisible particles can affect exclusive possession as distinguished from use and enjoyment. In their leading hornbook, which the Supreme Court of Virginia cited in *Cooper*, Prosser and Keeton criticize this holding:

> While it is generally assumed and held that a personal entry is unnecessary for a trespass, the defendant's act must result in an invasion of tangible matter. Otherwise, there would be no use or interference with possession ... .
>
> There are a few additional decisions finding a trespass constituted by the entry of invisible gases and microscopic particles, but only if harm results. These are, in reality, examples of either the tort of private nuisance or liability for harm resulting from negligence. The historical requirement of an intrusion by a person or some tangible thing seems the sounder way to go about protecting the exclusive right to the use of property.

*Op. cit.* at 71-2.

Prosser and Keeton distinguish the allegations in this case from an invasion of water from a dam, as in *Cooper*, because water from a dam "usually occupies a significant space, at least for a short period, whereas the liquid that seeps into soil or water does not." *Op. cit.* at 72.

Contrary to the modern trend, Virginia law allows an action for trespass for inadvertent entries, and it requires that the entry be a direct not an indirect result of the defendant's act. I therefore conclude Virginia law continues to require an entry of tangible matter. To hold to the contrary would remove a fundamental distinction between trespass *quare clausum fregit* and private nuisance.

July 23, 1997

Virginia Power has filed a motion for partial summary judgment on the issue of damages for nuisance. The motion will be sustained in part.

The plaintiffs claim the diminution in value of their property as an element of damages. The plaintiffs have alleged in paragraph 37 of their amended motion for judgment that the nuisance is temporary and abatable. If the nuisance can be abated, the plaintiffs may not recover damages for the permanent diminution in value of the property. *Packet v. Herbert*, 237 Va. 422, 377 S.E.2d 438 (1989). The plaintiffs rely on *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 360 S.E.2d 841 (1987). There the Supreme Court recited that there was evidence at trial that both the cost of curing the damage and the diminution in value of the plaintiff's property exceeded the amount of the jury's verdict. The Court did not hold that diminution in value of the property is an element of damages for an abatable nuisance. The plaintiffs have also relied on decisions from courts of other states, but *Packett* answers the question in Virginia.

The plaintiffs will not be allowed to recover relocation costs for an abatable nuisance. If the nuisance can be abated, that is, ended or diminished to such an extent the plaintiffs regain the use and enjoyment of their property, there is no need for the plaintiffs to relocate.

Virginia Power claims that the damages the plaintiffs may recover for abatement costs may not exceed the value of the property. I agree. To allow a recovery for abatement costs in excess of the value of the property in the absence of the nuisance would be unreasonable economic waste. For cases applying this rule in different contexts, see *Mann v. Clowser*, 190 Va. 887, 59 S.E.2d 78 (1950); *Lee v. Bell*, 237 Va. 626, 379 S.E.2d 464 (1989).

The plaintiffs will be allowed to recover damages for emotional distress as part of their claim for the loss of the use and enjoyment of the land. *Bowers v. Westvaco*, 244 Va. 139, 419 S.E.2d 661 (1992). Although the plaintiffs should have specifically stated this claim in their original rather than supplemental answers to interrogatories, the amended motion for judgment does not make claim for "any damages or costs associated with exposure to hazardous and toxic compounds." I note from correspondence attached to various pleadings that the defendants had the opportunity to examine the plaintiffs about this claim at their depositions.

August 4, 1997

This letter will address the two remaining motions on which I ruled from the bench on July 29th.

*Separate Trial on the Special Plea*

Contrary to Virginia Power's claim, *Kole v. Chesapeake*, 247 Va. 51, 439 S.E.2d 405 (1994), does not mandate a separate trial on a plea of the statute of limitations when the defense of judicial estoppel is raised. There the Circuit Court granted the defendant's plea of the statute of limitations based solely upon the allegations of the bill of complaint. The Supreme Court reversed and held that the Circuit Court should have held an evidentiary hearing on the issue.

A separate trial on the plea of the statute of limitations is within the Court's discretion. Code of Virginia, § 8.01-281(B). I deny the request because I believe separate trials would result in the duplication of much of the expert testimony and would thus not be convenient to the parties or the court. As very technical expert testimony will be much of the evidence in either a single trial or separate trials, I believe the jury is just as likely to be confused in either event.

The principal reason Virginia Power requests separate trials is the inconsistency of its defenses. It is claiming, in short, that it did not damage the plaintiffs' property, but that, if it did, the damage occurred more than five years before the action was filed. Whether it wishes to present one or both of these defenses to the jury is a tactical decision it will have to make.

I also note that in several reported nuisance cases, the general issue and the statute of limitations were tried to one jury. *Arminius Chemical Co. v. Landrum*, 113 Va. 7, 73 S.E. 459 (1912); *Southern Ry. v. McMenamin*, 113 Va. 121, 73 S.E. 980 (1912); *Worley v. Mathieson Alkali Works*, 119 Va. 862, 89 S.E. 880 (1916); *Magruder v. Virginia-Carolina Chemical Co.*, 120 Va. 352, 91 S.E. 121 (1917).

Virginia Power also relies on *Bolen v. Overnite Transportation Co.*, 3 Va. Cir. 345 (Richmond 1985). There the issue was whether a separate trial ought to be granted on a plea of accord and satisfaction. Judge Walker was greatly influenced in granting a separate trial by the consideration that insurance coverage would necessarily be disclosed in proving the affirmative defense. That issue is not present in this case.

*Statute of Limitations*

The resolution of the plea of judicial estoppel against Virginia Power resolves the motion for summary judgment on the statute of limitations because, absent the estoppel, there is no conclusive evidence of the date the plaintiffs' property was damaged. There has been much disagreement between the parties about what effect, if any, the ability to abate the nuisance has on the statute of limitations. A decision on this issue is not necessary on the pending motion, but the issue will almost certainly arise at trial, and my thoughts on the matter may affect your settlement negotiations.

Virginia Power claims that the nuisance in this case, assuming there is one, is permanent; the plaintiffs claim the nuisance is temporary. In cases of permanent nuisance, the plaintiff's cause of action accrues when the damage first occurs, and the burden of proof on the statute of limitations is on the defendant. *Southern Ry. v. Watts*, 134 Va. 503, 114 S.E. 736 (1922). However, the first entry of pollutants onto a plaintiff's property will not necessarily constitute damage for purposes of the accrual of a nuisance cause of action unless the quantity is so great as to constitute a nuisance. *McKinney v. Trustees of Emory & Henry Coll.*, 117 Va. 763, 768, 86 S.E. 115, 117 (1915); *G. L. Webster v. Steelman*, 172 Va. 342, 364, 1 S.E. 2d 305, 314 (1939). When the damage first occurred is a question for the jury. *Louisville & Nashville RR. v. Saltzer*, 151 Va. 165, 144 S.E. 456 (1928).

Some courts have held that the ability to abate the nuisance renders it temporary. See, for example, *Harrisonville v. W. S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 341 (1933). I believe that under Virginia law, the ability to abate the nuisance does not determine whether a nuisance is permanent or temporary for statute of limitations purposes; it may, however, affect whether the damages are of a permanent character.

In Virginia the plaintiff has but a single cause of action when either (1) the damages are of a permanent character and go to the entire value of the plaintiff's property or (2) the nuisance is permanent, the consequences of which in the normal course of things will continue indefinitely. *Virginia Hot Springs Co. v. McCray*, 106 Va. 461, 464, 56 S.E. 216, 218 (1907); *McMenamin*, 113 Va. at 131, 73 S.E. at 983; *Southern Ry. v. White*, 128 Va. 551, 565, 104 S.E. 865, 870 (1920). I have found no Virginia case in which the ability to abate the nuisance has been held to have any bearing on its classification as permanent.

The permanent nuisance cases of the Supreme Court of Virginia may be divided into two categories: (1) those where an inactive structure became a nuisance through the forces of nature, *Norfolk County Water Co. v. Etheridge*,

120 Va. 379, 91 S.E. 133 (1917) (dam); *White*, (culvert); *Watts* and *Saltzer*, (diversion of creek into new channel), and (2) those where the normal operation of the structure will necessarily produce the ills complained of, *McMenamin*, (railway yard); *Worley*, (chemical plant); *Magruder*, (iron mine); *Steelman*, (canning factory).

In distinguishing between permanent and temporary nuisances, the only factor the Supreme Court has stated is whether human labor is necessary before an injury can occur, *Norfolk & Western Ry. v. Allen*, 118 Va. 428, 436, 87 S.E. 558, 561 (1916), or, stated differently, whether the injury inflicted depends upon the use of the property, *White*, 128 Va. at 566, 104 S.E. at 870. It must be acknowledged, however, that the ability to abate the nuisance never appears to have been considered as a basis for the distinction.

*Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 360 S.E.2d 841 (1987), is consistent with *Allen*, another temporary nuisance case. The structures in both these cases were built entirely on the defendant's land; they were not *per se* injurious to the plaintiffs; injury was only caused by periodic operations, the "wrongful act" of opening the by-pass valve in *Hampton Roads*, and of withdrawing excessive water from the river in *Allen*.

The only Virginia authority I have found in support of the proposition that the ability to abate a nuisance determines its permanence is this statement in the *Virginia Model Jury Instructions — Civil*, vol. I, p. I-575: "the statute of limitations operates differently in actions for temporary and permanent nuisances. A temporary nuisance is one which is removable or abatable. . . ." However, Instruction No. 26.020, which defines a permanent nuisance, does not mention abatement.

The Supreme Court of Virginia also held it is "not essential to the defense of the statute of limitations that the damage complained of should exist to the same extent during the period of five years." *McMenamin*, 113 Va. at 132, 73 S.E. at 983, and that intermittent and recurrent injuries to the plaintiff's land may be caused by a permanent nuisance and diminution in the value of the plaintiff's land is the measure of damages. *Etheridge; White*.

The permanence of the injury and the nuisance are ordinary questions of fact for the jury. *McCray*, 106 Va. at 471, 56 S.E. at 220. However, several cases, *Worley, Magruder, Etheridge*, and *Steelman* indicate that in proper circumstances, the issue may be one of law.