## CIRCUIT COURT OF LOUDOUN COUNTY

Providence Village
Townhome Condominium Ass'n
Board of Directors

    v.

Allied Plywood Corp.,
Chesapeake Corp., and
Applied Research Group, Inc.

July 26, 1995

Case No. (Law) 15529

BY JUDGE THOMAS D. HORNE

This case is before the Court on the defendants' demurrer to the amended motion for judgment and bill of particulars as supplemented by the plaintiff. On May 3, 1994, the Board of Directors of Providence Village Townhome Condominium Association filed a motion for judgment against Allied Plywood Corporation, Chesapeake Corporation, and Applied Research Group, Inc. The plaintiff seeks judgment from the defendants for breach of express warranties on fire retardant treated plywood used in constructing roofs on buildings and sheds at Providence Village Townhome Condominiums.

The plaintiff, the Providence Village Townhome Association ("the Association") is an unincorporated association created under Chapter 4.2 of Title 55 of the Code of Virginia. The Association functions pursuant to the authority conferred in that statute in managing the condominium.

Defendant Allied Plywood Corporation is an Ohio corporation which has been qualified to do business in Virginia and maintains a registered agent in Alexandria, Virginia. In its motion for judgment, the plaintiff alleges that Allied supplied and placed into the stream of commerce wood, including wood treated with chemicals for fire retardancy and other build-

ing products, utilized in the construction of units and common elements at Providence Village.

Defendant Chesapeake Corporation is a Virginia corporation which maintains its registered agent in Richmond, Virginia. In its motion for judgment, the plaintiff alleges that Chesapeake engaged in the manufacture, production, and chemical treatment of the aforementioned wood and wood products.

Defendant Applied Research Group, Inc. ("ARGI") is a Virginia corporation which maintains its registered agent in Richmond, Virginia. In its motion for judgment, the plaintiff alleges that the fire retardant treated plywood utilized in the construction of the Providence Village Townhomes and supplied by Chesapeake was treated by fire retardant chemicals developed, manufactured, marketed, and sold to Chesapeake by ARGI.

On November 16, 1994, this Court entered an Order granting defendant's motion for a bill of particulars and to crave oyer and deferring ruling on the demurrer. The plaintiff filed a bill of particulars on October 20, 1994, which was later supplemented, and on May 3, 1995, the Court heard argument on the demurrer.

The plaintiff in this action seeks relief for an alleged breach of express warranties on fire retardant treated plywood. In its motion for judgment, the Association alleges that the roofs of buildings and sheds at the condominium experienced leaks, bowing, deterioration, delamination, and other defects. The plaintiff further alleges that these defects are attributable to the treatment, manufacture, and supply of defective fire retardant treated plywood used in constructing the roofs. The plaintiff alleges that the treaters and suppliers of the wood expressly warranted that the wood was fit for its intended purpose and merchantable, that it would last for the life of the roof, that it would maintain its fire retardant properties for the life of the structure, and that it would withstand structural damage.

In its bill of particulars, the plaintiff states, on information and belief, that Chesapeake and ARGI represented in product literature that "Lifetime lumber withstands structural damage," and that such literature was published and distributed within the building industry by the defendants before construction of the condominium was completed. The plaintiffs claim that by putting the plywood and the literature containing these representations into the stream of commerce, Chesapeake, Allied, and ARGI made warranties which became a "basis of the bargain" of the Defendants' sales of treated plywood.

In their demurrer, the defendants contend that the Association may not rely upon any express warranties of future performance in pursuing their claims against the defendants.

In ruling on a demurrer, the facts upon which the Court may rely are the facts well pleaded and inferences properly drawn from the facts alleged, including facts expressly alleged, facts fairly inferred from facts alleged, and facts impliedly alleged. *See, e.g., Rosillo v. Winters*, 235 Va. 268 (1988).

After considering the memoranda filed in this case and the argument of counsel in light of the motion for judgment and bill of particulars, the Court will, for the reasons stated hereinafter, sustain the demurrer as to all defendants.

In analyzing this case, the Court looks first to the holding of the Circuit Court of Fairfax County in *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 30 Va. Cir. 22 (1992). In that case, Winchester Homes sued in its capacity as builder and as the assignees of all claims received by the homeowners. Winchester Homes sought recovery from several defendants, including Chesapeake and ARGI, for alleged defects in fire retardant treated plywood used in building roofs of townhomes. The case was tried before a jury on two claims by Winchester Homes, as assignee of the homeowners, against Hoover Treated Wood Products, the remaining defendant. A jury found that Hoover had breached an express warranty under the U.C.C. and also the U.C.C. implied warranty of fitness for a particular purpose.

Hoover moved for and was granted a judgment notwithstanding the verdict by the Circuit Court of Fairfax County. *Id.* at 33. The basis for that ruling was that Winchester Homes lacked a cause of action. *Id.* Winchester Homes subsequently appealed the decision. On March 2, 1994, the Supreme Court of Virginia denied the appeal, finding "no reversible error in the judgment complained of." The Supreme Court of Virginia denied a petition for rehearing that case on April 15, 1994.

In the case at bar, the facts are strikingly similar to the facts presented in the *Winchester* case. This Court finds that this case is not distinguishable from *Winchester* on the grounds that the plaintiff in the earlier case, Winchester Homes, is a builder, while the instant plaintiff, Providence Village, is a homeowner board. Providence Village brings its claim in the place of homeowners, pursuant to § 55-79.39, et seq., Code of Virginia; Winchester Homes, in the claims which went to trial and were subsequently disposed

of pursuant to a judgment notwithstanding the verdict, brought its claims in the place of homeowners, as assignee of those claims.

Both cases involve homeowners, or someone suing in their place, seeking judgment against the manufacturers, treaters, and distributors of fire retardant treated plywood. Each scenario is centered around two transactions: the sale of the home to the homeowner and the sale of the fire retardant treated plywood to the builder. At the demurrer stage, the Court has before it the same issue the Fairfax Court had before it when it decided the motion for judgment notwithstanding the verdict: does the plaintiff present a cause of action for relief under Virginia law?

Were the focus of the inquiry to be on the sale to the builder, the broad antiprivity provisions of the Uniform Commercial Code might, under certain circumstances, afford relief to the homeowner as a person affected by the goods. Although not in the distributive chain, the homeowner, under such circumstances, it may be argued, is in horizontal privity to the home-builder.

It is clear that the sale of the plywood, in and of itself, comes with warranties available under the U.C.C. Section 8.2-102 of the Code of Virginia states that the U.C.C. is applicable to "transactions in goods." "Goods" is defined as "all things which are movable at the time of identification to the sale . . . ." § 8.2-105, Code of Virginia. The plywood sold to the builder is a good. Accordingly, the sale would be subject to the provisions for express warranties under § 8.2-313 and to the provisions for implied warranties under § 8.2-314 of the Code of Virginia. Virginia's antiprivity statute, § 8.2-318, Code of Virginia, states that:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages brought for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods.

This Court acknowledges that in a previous letter opinion, it concluded that the antiprivity provisions of § 8.2-318 present a case warranting factual inquiry with respect to the extent to which horizontal privity may be extended to others who might "reasonably be expected to . . . be affected by the goods" with respect to the sale to the builder. However, the clear mandate of the *Winchester Homes* decision is to preclude such an inquiry

as a matter of law based upon matters of public policy affecting the sale of real estate. In *Winchester*, the Court focused upon the second transaction, that is, the sale of the completed home.

The Circuit Court of Fairfax County reasoned in *Winchester Homes*:

> If the first transaction is focused on, the homeowners in this case would likely fall within the language of the anti-privity statute because the [fire retardant treated plywood] constituted "goods" at that time, and the homeowners were "persons whom the manufacturer . . . might reasonably have expected to use, consume, or be affected by the goods."

30 Va. Cir. at 30.

Neither the facts of this case nor the facts in *Winchester Homes*, however, are that the sale of plywood was made in isolation. The plywood in question was sold to the builder who used the plywood to build roofs. As such, the plywood was incorporated into realty. Therefore, reasoned the Fairfax Court, "[T]he Court finds since the [fire retardant treated plywood] was subsequently incorporated into realty, extending the U.C.C.'s applicability under § 8.2-318 to such building components would be against public policy. Hence the second transaction determines the rights of the parties." *Id.*

The Supreme Court of Virginia denied a petition for appeal in the *Winchester Homes* case. This Court must consider the denial of the petition to be a decision on the merits, especially where the facts of the case are so similar and the issue before the appellate court implicated matters of public policy. *See Tate v. Hain*, 181 Va. 402 (1943); *Saunders v. Reynolds*, 214 Va. 697 (1974).

The ruling in *Winchester Homes* focused on the second transaction, that is, the sale of the completed home. The Fairfax Court reasoned that this sale of realty governed any warranty implications in regard to the plywood. Once the plywood was incorporated into realty, the initial transaction was, in effect, nullified for the purposes of U.C.C. warranties. While this Court is of the opinion that the antiprivity statute, by its language, is far-reaching and could reasonably be interpreted to extend to the situation in this case, it is compelled to agree with the position taken by the defendants based upon the action by the Supreme Court of Virginia in the *Winchester* case and the later legislative action in granting relief to homeowners under similar circumstances through changes to the provisions of Title 55 of the Code of Virginia. Had the General Assembly intended to

clarify rather than to correct the law with respect to such warranties, one would have expected that they would have used as a vehicle the statute construed in *Winchester*, that is, the Uniform Commercial Code. Instead, it is the second transaction, the sale of the completed structure, which is the focus of legislative change. Thus, the homeowner is now deemed to have been assigned the manufacturer's warranty at settlement as part of the sale of the completed structure. § 55-70.1, Code of Virginia.

Section 55-70.1 of the Code of Virginia is the vehicle through which homeowners can find warranty protection. That provision creates a right of action for consumers against the builders of homes. Subsequent to the *Winchester* decision, the General Assembly of Virginia amended § 55-70.1 to allow a direct cause of action by homeowner plaintiffs against the manufacturers of fire retardant treated plywood. As noted earlier, the Court believes that this further demonstrates that the previous statutory framework did not provide homeowners a direct cause of action against manufacturers of fire retardant treated plywood. The amendment applies only to causes of action filed after July 1, 1994, and is therefore inapplicable to this case.

This Court's ruling to this point has been based on the conclusion that warranty protections available under the U.C.C. are not applicable in this case. Were the U.C.C. applicable in this case, however, the Court would, for the reasons stated hereinafter, also sustain a demurrer.

The defense attacks the pleadings on the basis that they do not properly allege a breach of express warranty. Under Virginia Code § 8.2-313, any theory of express warranty claim, whether by affirmation, promise, description, or model, must allege that such affirmation, promise, description, or model was made part of the "basis of the bargain."

In Paragraph 3 of its bill of particulars, the plaintiff states: "The plaintiff is unaware of ever receiving the referenced product literature or of any unit owner ever receiving it." While reliance is not a necessary element to recovery under the Uniform Commercial Code, vague references to statements placed in the general stream of commerce are not sufficient to withstand demurrer. *See Daughtrey v. Ashe*, 243 Va. 73 (1992). The plaintiff alleged only that literature published and distributed by the defendants, but never received by the plaintiffs, contained the express warranty provisions which they allege were breached.

The Court also rules at this time that the plaintiff failed to plead sufficiently a claim for express warranty of future performance.

The demurrer is sustained. As the express warranty claim is barred by reason of lack of privity, it would not be appropriate for the Court to permit any further amendment to the pleadings. Accordingly, the demurrer will be sustained, and the amended motion for judgment will be dismissed and the case removed from the docket.