## CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Fentress Families Trust et al.

    v.

Virginia Electric & Power Co. et al.

                Case No. CL09-710

Darryl Sears et al.

    v.

Virginia Electric & Power Co. et al.

                Case No. CL09-1914

                July 29, 2010

By Judge Randall D. Smith

This matter was before the Court on January 21, 2010, when the Court heard argument on the demurrers filed by Defendants Virginia Electric and Power Co./Virginia Dominion Power ("Dominion") and VFL Technology Corp./Headwaters, Inc. ("Headwaters"). During the hearing, it was agreed that although the cases would not be formally consolidated at this time, they would be dealt with together concerning all pre-trial proceedings for purposes of judicial efficiency. Upon consideration of the arguments of counsel, the briefs submitted, and a review of the law, the Court stands ready to render its ruling on the Defendants' demurrers.

*Facts*

The facts alleged in this case are voluminous, and the Court, for purposes of efficiency, has looked to the facts as alleged in the Sears Amended Complaint, assuming that the Plaintiffs would seek to amend the other previously filed Complaints in conformity with that pleading. The Plaintiffs represented that all Defendants were in agreement that the Amended Complaint was properly before the Court.

The Plaintiffs in this case are homeowners and residents of the City of Chesapeake residing in close proximity to the Battlefield Golf Course. Defendant MJM Golf ("MJM") is the current owner of Battlefield Golf Club. The Plaintiffs allege that Defendant Virginia Electric and Power Co./Virginia Dominion Power ("Dominion") systematically developed a plan for the disposal of its coal ash byproduct and in doing so, contracted with Defendant Combustion Products Management/Combustion Products Management Virginia/CPM Virginia ("CPM") and Defendant VFL Technology Corp./Headwaters, Inc. ("Headwaters") to remove the coal ash from Dominion's Chesapeake site, mix the byproduct with binding agent, transport it to the golf course property, and utilize the coal ash in the construction of the golf course. Although this is an oversimplification of the complicated facts alleged in the Complaint, this general statement summarizes the essence of the situation.

The Plaintiffs filed suit alleging twelve separate causes of action: (1) nuisance; (2) product liability/failure to warn; (3) product liability/express warranty; (4) negligence; (5) fraud; (6) constructive fraud; (7) trespass; (8) res ipsa loquitur; (9) battery; (10) intentional infliction of emotional distress; (11) negligent infliction of emotional distress; and (12) conspiracy and fraud.

*Standard of Review*

In challenging a cause of action, a party may demur on the ground that the pleading fails to state a cause of action upon which relief may be granted. Virginia Code § 8.01-273. "The basis of every right of recovery under the American system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought." *Potts v. Mathieson Alkali Works*, 165 Va. 196, 206, 181 S.E. 521, 524 (1935). The purpose of a demurrer is to test the legal sufficiency of the allegations. *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317-18, 626 S.E.2d 428, 429-30 (2006). In considering a demurrer, the Court must take the facts alleged in the Complaint as true; however, the Court need not accept the pleader's statements of law as correct. *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 102, 540 S.E.2d 134, 137 (2001); *McDermott v. Reynolds*, 260 Va. 98, 100, 530 S.E.2d 902, 903 (2000). A ruling on a demurrer is thus not a ruling on the merits of a case but merely a determination of the sufficiency of the facts as pleaded. *Barber v. VistaRMS, Inc.*, 272 Va. 319, 327, 634 S.E.2d 706, 711 (2006).

Virginia requires notice pleading, so not all specifics of a claim need to be alleged, but only enough to put a party on notice of the claim. A Complaint must advise the Defendants of the nature of the claims so as to enable the Defendants to fully appreciate the allegations of which they must defend. The Rules of the Supreme Court of Virginia state that "every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the party of the true nature of the claim or defense." Va. Sup. Ct. R. 1:4 However, "despite the liberality of presentation which the court will indulge, the [complaint] must state a cause of action." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006). In addition, the Complaint must state all of the facts necessary to meet the legal standard of pleading for the specific claim or cause of action.

On June 23, 2010, the Court heard motions to consider supplemental authority filed by Dominion that included a portion of the Environmental Protection Agency ("EPA") report that was released after the demurrer was briefed and argued. The Plaintiffs objected to the consideration of the report for the demurrer.

The Court finds that, for purposes of the demurrer, absent agreement of the parties, the Court is limited by law to consider only facts alleged in the Plaintiffs' Complaint. The Court must presume the facts alleged are true and may make reasonable inferences from those facts. The EPA report was not a part of the Plaintiffs' Complaint, and, therefore, the Court will not consider it for purposes of the demurrer.

Subsequent to the June hearing, both Dominion and Headwaters sent the Court supplemental authority to consider before rendering its opinion. That case is the *Chinese Drywall* consolidated cases from the Norfolk

Circuit Court. Through its own research, the Court was aware of this opinion and considered it but decided not to address it in the original draft of this opinion letter because, as an opinion from a Circuit Court, it is only persuasive authority, and, as will be further discussed, it is distinguishable from these facts. As Defendants have forwarded this opinion in support of their positions, the Court will address the case in its consideration of the issues.

## Analysis

Dominion demurs generally to the Complaint on three general grounds: (1) the Plaintiffs' Complaint is improperly pleaded because it fails to state specific allegations as to each of the Plaintiffs; (2) the Complaint fails to state a duty owed by the Defendants to the Plaintiffs or how Dominion is the proximate cause of harm; and (3) Plaintiffs do not plead a specific harm to any person. In addition, Dominion then demurs to each of the twelve counts individually. Headwaters also demurred to the Complaint and concurred in many of Dominion's arguments at the hearing. In addition, the Plaintiffs agreed at the hearing that certain counts be dropped against Headwaters as the Complaint had failed to allege sufficient facts against Headwaters.

The Court has taken into consideration the overarching arguments made by counsel but recognizes that even those arguments must be taken in the context of the individual causes of action. A complicating factor is that the Plaintiffs wish to allege, of course, all possible causes of action against the Defendants, as some are preferred over others from the Plaintiff's perspective because the damages may be greater, the claims easier to prove, or to avoid some defenses. Similarly, the Defendants wish to have all of the facts stated by the Plaintiffs and each basis of the claims clearly listed and catalogued. With all of these considerations in mind, the Court will address each of the individual counts in turn.

## A. *Nuisance*

The Plaintiffs have alleged a claim of nuisance against Dominion, Headwaters, and the other two Defendants who have not demurred. In the Complaint, the Plaintiffs allege that the Defendants caused the Plaintiffs' property to be invaded by toxins, causing personal injury and impairing the Plaintiffs' use and enjoyment of their property.

The Supreme Court of Virginia has noted:

> Nuisances are of two kinds, public or common nuisances, which affect people generally, and private nuisances which may be defined as anything done to the hurt of the lands,

tenements, or hereditaments of another. A private nuisance is an activity which unreasonably interferes with the use and enjoyment of another's property. In other words, a private nuisance is one which implicates or interferes with a right or interest that is unique to an individual, such as an interest in land.

*Virginia Beach v. Murphy*, 239 Va. 353, 355, 389 S.E.2d 462, 463 (1990) (quoting *White v. Town of Culpeper*, 172 Va. 630, 636, 1 S.E.2d 269, 272 (1939)).

This case deals with a private nuisance, that which "injuriously affect[s] an owner . . . (1) by diminishing the value of that property; (2) by continuously interfering with his power and control or enjoyment of that property; (3) by causing material disturbance or annoyance to him in his use or occupation of that property." *Virginia Ry. v. London*, 114 Va. 334, 334-35, 76 S.E. 306, 308 (1912).

Dominion and Headwaters, as a preliminary matter, demur to this allegation on the basis that the claim for negligence contained in Count IV of the Complaint subsumes the nuisance claim. In support of this proposition, they cite to *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 368 S.E.2d 268 (1988). That case dealt with the disposal of chemical waste buried underground on a piece of property purchased by Philip Morris.

In the *Philip Morris* case, the Court noted that it would "look to the object of the action, rather than its form, to determine the extent of liability of the defendants." *Id.* at 407, 368 S.E.2d at 282. The *Philip Morris* claim did not allege intrusion of smoke, odors, and water as in the case law precedent cited by the proponent of the nuisance claim. Therefore, the Court held that "[m]erely attaching the label 'nuisance' to an action for personal injuries does not alter the nature of the action. Where the acts or omissions constituting negligence are the identical acts which it is asserted give rise to a cause of action for nuisance, the rules applicable to negligence will be applied." *Id.* at 407, 368 S.E.2d at 283. In summation, the Supreme Court prohibited a party from claiming to recover in nuisance for what was in effect a claim for negligence where the plaintiff sought to avoid the rules of negligence law that could adversely affect his claim, for example, the defense of contributory negligence.

The Defendants also cite to *Stockbridge Community Assn. v. Star Enterprises*, 27 Va. Cir. 82 (Fairfax 1992). That case involved a petroleum leak whereby the oil infiltrated the Plaintiffs' property. The court siphoned off the request for injunctive relief and transferred that part of the nuisance claim to the equity side of the court, and then, recognizing that a party cannot recover the same damages on multiple theories, dismissed the claim for nuisance.

The case at bar is distinguishable from *Philip Morris* in that the Plaintiff has stated in the Complaint that the chemicals leached from the golf course and "physically invaded, and spread into Plaintiff's drinking water and into their property." Pls. Am. Comp. ¶ 225. The Amended Complaint also states that "Plaintiffs' interest in the use and the enjoyment a person normally derives from the occupancy of land has been denied and diminished." Pls. Am. Comp. ¶ 226.

In this case, the acts or omissions giving rise to the negligence claim are similar and very nearly identical to the acts involved in the nuisance claim. However, the two claims request at least partially different remedies. Although they both contain requests for monetary damages and injunctive relief, the nuisance claim requests abatement. As the courts of law and equity merged in 2006 under Rule 3:1 of the Rules of the Supreme Court of Virginia, this Court cannot send the request for equitable remedies to the other side of the court and dismiss the claim due to the duplicative nature of the requests.

The Supreme Court of Virginia has held that a party may not recover twice for the same damages. However, Rule 1:4 of the Rules of the Supreme Court of Virginia clearly permits that "[a] party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." This rule allows a party to pursue alternative theories until such a point as the legal standard, be it on demurrer, summary judgment, or a motion to strike, is no longer met.

Unlike *Philip Morris*, the Plaintiffs have properly pleaded a cause of action for nuisance, and, unlike *Stockbridge*, the Court has before it requests for both legal and equitable remedies. Although they will be limited in their recovery, the Plaintiffs have sufficiently pleaded facts to support a claim for nuisance that should not be dismissed due to the possibility of being subsumed by negligence. On this ground, the demurrer is overruled. Should the Defendants establish facts to support a defense that is barred by the Plaintiffs' election of nuisance as a cause of action, then the Court will reconsider allowing the claim if such provides an improper advantage or eliminates a defense that is permissible under the facts.

In his treatise on personal injury law in Virginia, Charles Friend stated:

> In order for there to be an actionable nuisance, it is not necessary that there be a finding of negligence or intentional wrongdoing. While negligence may result in an activity being declared a nuisance, it is not necessary to allege or prove negligence to establish that a nuisance exists or to establish that the Defendant should be held liable for it. A nuisance, however careful it is conducted is unlawful, and where a

  nuisance exists, it is immaterial whether the nuisance was created by, or operated with negligence or reasonable care.

Charles E. Friend, *Personal Injury Law in Virginia*, 451-52 (3d ed. 2003).

  Depending on the facts, there may be strict liability or, where conducted by a public entity, it may be necessary to show that the activity was negligently conducted. There is confusion in the case law distinguishing between negligence and nuisance, but the cases may be reconciled by eliminating those brought under nuisance to avoid issues arising under negligence law. Simply stated, while nuisance is broad and encompasses a wide variety of conduct, it will not serve to supplant what is in reality a different cause of action that allows the Plaintiff a procedural advantage or avoids the consequences of contributory negligence.

  The Defendants further demur to the claim of nuisance on the ground that neither of them own or control the nuisance that prevents them from being liable. Courts have found that the author or instigator of a nuisance is responsible for the nuisance without the requirement that it be maintained in the author's control. In the case of *Malezi v. S. W. Rogers Co.*, 24 Va. Cir. 122, 123 (Fairfax 1991), the court found that "the defendant in a nuisance action need only have created or maintained the condition. . . . Liability is properly based against those who create or 'author' the condition, without regard to the power or control to maintain the area where the nuisance is located." The court further noted that, in order to extend liability, the activity need not be ultrahazardous, but that when the activity is inherently dangerous or will necessarily cause a nuisance, then the employer of the contractor is vicariously liable. *Id.* at 124 (citing *N. & W. Ry. v. Johnson*, 207 Va. 980, 983-84, 154 S.E.2d 134, 136 (1967)). Whether or not an activity is inherently dangerous is a question of fact.

  The Defendants have also offered the Chinese drywall cases out of the City of Norfolk to support the position that they cannot be held liable in a private nuisance action for a nuisance which they no longer own or control. *In re Chinese Drywall Cases*, 80 Va. Cir. 69 (Norfolk, 2010). There are three basic distinctions between the Chinese drywall cases and the case at bar. The first is that the plaintiffs in that case conceded that the Supreme Court of Virginia has not recognized a cause of action for private nuisance when the nuisance is no longer controlled by the defendant. *Id.* at 85. In this case, the Plaintiffs have made no such concession. As stated above, the Court finds that allegations of authoring a nuisance are a sufficient basis for a claim of private nuisance against a Defendant who no longer owns or controls the property.

  The Chinese drywall cases further discussed whether or not the Supreme Court of Virginia would adopt the position of the Restatement of Torts that one who creates a condition on land that invades the land of another is subject to liability even after the sale of the land to a third party.

*Restatement (Second) of Torts*, § 834, comment e (1979). The Norfolk Circuit Court determined that this section of the Restatement did not apply because the Plaintiffs did not allege a condition that the defendants made "upon land" that impacted the land of the plaintiff. *In re Chinese Drywall*, 80 Va. Cir. at 86. This case is distinguishable because the Plaintiffs have alleged that the Defendants created a nuisance upon the land that has consequently invaded the Plaintiffs' property. As previously discussed, Virginia law allows for such claims even if the Supreme Court of Virginia has not specifically adopted the Restatement of Torts section.

In this case, the coal ash is allegedly a dangerous and toxic material. In addition, the Complaint makes allegations as to the relaxed safety standards in using the coal ash in the planning and development of the golf course leading to the creation of a nuisance. The Plaintiffs have pleaded sufficient facts to allege that Dominion and Headwaters were involved in the authoring of the nuisance so as to expose these two Defendants to liability. The facts also allege that Dominion controlled the depositing operation to some extent. The Defendants' demurrers are overruled on this basis.

## B. *Product Liability; Failure to Warn*

Both Dominion and Headwaters demur to the product liability claim on the grounds that the case at bar is not a product liability case and that the duty to warn extends only to purchasers and foreseeable users of the product. The Defendants argue that the Plaintiffs do not belong in either category, and thus there was no duty to warn.

The Supreme Court of Virginia in *Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 252 S.E.2d 358 (1979), adopted the standard set forth in the Restatement of Torts in establishing liability for failure to warn. Thus, a manufacturer of a product is liable when the manufacturer:

> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Restatement (Second) of Torts*, § 388 (1965), cited in *Featherall*, 219 Va. at 962, 252 S.E.2d at 366 (1979). Thus, in order to assert a claim for failure to warn, the Plaintiff must be a purchaser or foreseeable user of the chattel, as the Supreme Court acknowledged in *Featherall* by stating, "it extends

not only to the immediate purchaser but to other persons who might in the ordinary and natural course of events be subjected to danger." *Id.*

The Plaintiff argues that the users of the golf course and the community surrounding the golf course were users without due warning. However, the Plaintiffs do not make any assertion that they were users in the Amended Complaint; rather, the Amended Complaint focuses on the Defendants' actions but does not allege that the Plaintiffs were owed any duty. *See* Pls. Am. Comp. ¶¶ 231-36.

In addition, the Court has concerns about whether the coal ash at issue is a chattel that would fall under a product liability claim or whether, upon the development of the golf course, it became a part of the land and is thus real property. In this case, the coal ash might be considered chattel up to the point when it was delivered at the golf course. The issue, then, is whether it became part of the realty once it was used in the formation of the golf course. For example, appliances incorporated into a home may still be considered goods after the home is complete whereas products used to build the home itself are no longer goods. *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 30 Va. Cir. 22, 30 (Fairfax 1992). In addition, courts have relied on the "accepted work doctrine" that, once a builder or repairer has turned over the real property to the owner, then liability is relinquished. *See, e.g. Bay Point Condo. Ass'n v. RML Corp.*, 54 Va. Cir. 422 (Norfolk 2001); *Board of Dirs. of Providence Vill. Condo. Ass'n v. Allied Plywood Corp.*, 37 Va. Cir. 192 (1995); *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 30 Va. Cir. 22 (Fairfax 1992). This rule has been eroded as builders have been held strictly liable for materials, such as asbestos, used in construction of buildings. However, for the most part, a builder does not become an insurer.

Regardless of whether the coal ash is chattel, the Court finds that the Plaintiffs have not sufficiently pleaded that they are foreseeable users entitled to warning. Therefore, the Court sustains the demurrer to Count II.

## C. *Product Liability; Express Warranty*

At the hearing, the Plaintiffs agreed to dismiss the express warranty claim against Headwaters, as Plaintiffs agreed that the company had made no representations or guarantees. Dominion demurred to Count III on the ground that the Plaintiffs have failed to allege the essential elements of a claim for product liability/express warranty; specifically, that the Plaintiffs have not alleged that they were users or received an express guarantee, and even so, that Dominion did not sell a defective product.

Virginia Code § 8.2-313 sets forth the requirements for the creation of an express warranty. That section states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and

becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Virginia Code § 8.2-313 (1)(a). A good is defined as "all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid...." Virginia Code § 8.2-105.

In this case, the Plaintiffs allege that the Defendants made an express guarantee that the coal ash and binding agent were safe to use in the construction of the golf course. Pls. Am. Comp. ¶ 238. They further allege that the coal ash and binding agents are not safe and that the Defendants knew about the dangers associated with the material. Pls. Am. Comp. ¶¶ 238, 239.

Although not discussed in the briefs, the Court incorporates here the discussion in the previous section as to whether the coal ash could be considered a good or whether it is now a part of real property. This matter was raised at the hearing, although Dominion argued that, even if the coal ash was considered a good that there was no defect in the product at the time that Dominion sold the product to Headwaters and it was only after it went through a substantial change that the product became allegedly defective.

Most importantly, the Plaintiffs have made no allegations that the representations made by the Defendants induced them to make a purchase of the defective good, and they cannot make such an assertion because the actual purchaser of the good is another Defendant. However, privity is not required to bring a claim for breach of express warranty, so long as "the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods." Virginia Code § 8.2-318. This statute modifies the common law requirement that there be privity in order to recover damages. *Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 254 Va. 240, 246, 491 S.E.2d 731, 734 (1997).

The issue then becomes whether the Plaintiffs could be protected in the class of those who "use, consume, or [are] affected by the goods." Virginia Code § 8.2-318. There is a dearth of case law establishing what exactly it means to "be affected." The requirement that a person suing for product liability fall into one of these categories is to ensure that the Defendant is responsible only for damage that was foreseeable.

What the Plaintiffs attempt to do in this case is frame what is essentially a case of nuisance or negligence into a cause of action for product liability. This action is similar to what the Court has previously discussed in the context of the *Philip Morris* case when a plaintiff attempted to plead a case of negligence in the more attractive form of a cause of action for nuisance. When evaluating a cause of action, the Court will "look to the object of the action, rather than its form, to determine the extent of liability of the defendants." *Philip Morris*, 235 Va. at 407, 368 S.E.2d at 282. Similarly, although the Plaintiffs have attempted to mold these facts into a theory of product liability, the facts themselves do not support such a claim.

As in the claim for failure to warn, the Plaintiffs in this count have failed to properly allege a claim for breach of express warranty. The demurrer to the Plaintiffs' count for breach of express warranty is sustained.

D. *Negligence*

Count IV of the Complaint alleges negligence against Dominion, CPM, and Headwaters. The Defendants demur to the claim on the ground that the Plaintiffs have failed to plead the requisite elements for a negligence action.

To assert a claim for negligence, the Plaintiff must allege a legal duty owed by the Defendant, a breach of that duty by the Defendant, and a harm or injury that was proximately caused by the breach. *McGuire v. Hodges*, 273 Va. 199, 205-06, 639 S.E.2d 284, 288 (2007). Dominion demurs on the grounds that the Plaintiffs failed to allege a duty owed by the Defendants to the Plaintiffs, that Dominion was too far removed and thus could not have proximately caused any harm, and, lastly, that the Plaintiffs have not pleaded injury as a result of the breach. Headwaters also demurred to the Complaint, arguing that the Defendants did not plead sufficiently how Headwaters was negligent and that the Plaintiffs failed to assert harm caused by Headwaters' negligence.

The Plaintiffs' Amended Complaint appears to allege a strict liability theory against the Defendants, in that it alleges that coal ash is ultrahazardous and that the Defendants failed to use reasonable care in depositing the coal ash. Pls. Am. Comp. ¶¶ 247, 248. It is further alleged that despite being aware of the dangerousness of coal ash, the Defendants failed to use reasonable care to eliminate the danger. Pls. Am. Comp. ¶ 249.

As a rule, only blasting with dynamite is considered to be an ultrahazardous activity that automatically connotes strict liability. Such a distinction recognizes the "intrinsically dangerous and ultrahazardous activity [of blasting] since it is impossible to predict, with certainty, the extent of severity of a blast." *M. W. Worley Constr. Co. v. Hungerford, Inc.*, 215 Va. 377, 329, 210 S.E.2d 161, 163 (1974). Other activities may be recognized as ultrahazardous but are not given strict liability status automatically because the danger may be eliminated with the use of reasonable care. For example, the Court in *Philip Morris* did not designate the disposal of pentaborane gas as an ultrahazardous activity because reasonable care could mitigate the dangers involved." 235 Va. at 407, 368 S.E.2d at 282. Similarly, in *Standard Oil Co. v. Wakefield's Administrator*, 102 Va. 824, 829, 47 S.E. 830, 831 (1904), the Court found that although gas was not in and of itself a dangerous material, certain types of gas and in certain environments could certainly be dangerous and thus require due care. Whether or not a material is considered dangerous or hazardous is a question of fact.

Considering the allegations made in the complaint, the Plaintiffs have made a claim for negligence based on strict liability due to the Defendants' failure to use reasonable care with a dangerous material if they establish as fact that the coal ash is a dangerous material.

The next issue before the Court is the responsibility of each of the Defendants. The Plaintiffs' Amended Complaint seeks to hold all of the Defendants liable for the negligence involved in dealing with the coal ash. Defendant Dominion opposes such an allegation on the ground that they are too removed from the circumstances to be held liable.

Although, in general, employers of independent contractors are not responsible for the ordinary negligence committed by their contractor, the Supreme Court of Virginia has recognized that "[e]xceptions exist, and the doctrine of *respondeat superior* may become applicable, if the independent contractor's torts arise directly out of his use of a dangerous instrumentality, arise out of work that is inherently dangerous, are wrongful *per se*, are a nuisance, or are such that it would in the natural course of events produce injury unless special precautions were taken." *Kesler v. Allen*, 233 Va. 130, 134, 353 S.E.2d 777, 780 (1997) (citing *Broaddus v. Standard Drug Co.*, 211 Va. 645, 648, 179 S.E.2d 497, 501 (1971); *N. & W. Ry. v. Johnson*, 207 Va. 980, 983-84, 154 S.E.2d 134, 137 (1967); *Smith Adm'r v. Grenadier*, 203 Va. 740, 747, 127 S.E.2d 107, 112 (1962); *Ritter Corp. v. Rose*, 200 Va. 736, 742, 107 S.E.2d 479, 483 (1959)).

While not directly on point, this line of cases provides useful guidance to the Court for the case at bar. For example, in *T. E. Ritter Corp. v. Rose*, 200 Va. 736, 107 S.E.2d 479 (1959), the case involved an action between a railroad and a construction company that was a subcontractor for T. E. Ritter. The subcontractor was performing work associated with constructing a highway over the railroad tracks when the train struck the construction vehicle and caused the train to derail. The Court found T. E. Ritter, the general contractor, to be liable for the actions of the subcontractor and held:

> one who engages an independent contractor to do work of an inherently hazardous character, or to use a dangerous instrument, from either of which, in the natural course of things, it is likely that injurious consequences to others may arise, unless all reasonable precautions be taken to the end that third persons may be protected against injury, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of responsibility, if the independent contractor fails to exercise due care with respect to the performance of the work or the use of the dangerous instrumentality.

*Id.* at 742, 107 S.E.2d at 483.

In this case, the Plaintiff does not make any allegations that the Defendants were engaged in any formal employment or subcontract arrangement. However, there are significant allegations that Dominion was intricately involved throughout the entire development scheme. In the Amended Complaint, the Plaintiffs allege that Dominion was warned by the Virginia Department of Environmental Quality that they needed to dispose of the coal ash being stockpiled at the Chesapeake Energy Center. Pls. Am. Comp. ¶ 14. The Plaintiffs allege that Dominion was active in petitioning the City of Chesapeake to allow the coal ash to be deposited at the golf course instead of in a non-regulated landfill. Pls. Am. Comp. ¶¶ 72-86. In addition, it is alleged that the actual mixing of the coal ash with the binding agent was done at the Chesapeake Energy Center owned by Dominion and that Dominion was instrumental in the determination of how much binding material to use. Pls. Am. Comp. ¶¶ 75-77, 134, 135. Prior to the development of the golf course, Dominion commissioned two studies on the proposed land. Pls. Am. Comp. ¶¶ 87, 90. Thereafter, Dominion acted in concert with the other Defendants to transfer 1.5 million tons of the coal ash at the golf course. Pls. Am. Comp. ¶ 2. Lastly, the Plaintiffs allege that Dominion was actively involved in the development of the golf course, up, through, and including its negotiation and sale to MJM Golf, L.L.C., Pls. Am. Comp. ¶ 210.

These facts, which at this stage must be taken as true, establish that Dominion was actively involved in, and even in control of, many of the operations in developing the golf course. Given the exceptions that exist to allow a party with ultimate authority to be held liable for the negligence of an independent contractor, this Court finds that the Plaintiffs have pleaded sufficient facts to allow Dominion to remain a Defendant on the claim for negligence. Also incorporated here is the previous discussion in the section on nuisance of the somewhat blended or overlapping issues involving nuisance and negligence.

The Defendants' overarching argument as to the failure of the Plaintiffs to allege injury is most relevant in the context of the negligence claim. It is a well-settled principle that a cause of action does not accrue until the Plaintiff has suffered an injury or damage. *Locke v. Johns-Manville Corp.*, 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981) (citing *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969); *Barnes v. Sears, Roebuck & Co.*, 406 F.2d 859, 861 (4th Cir. 1969)).

The Defendants cite to *Johns-Manville* in support of their position that Plaintiffs' claim that they suffered injury as a result of inhalation and ingestion of coal ash does not suffice as injury for establishing a cause of action. In that case, the Plaintiff was exposed to asbestos over a twenty year period but only developed mesothelioma multiple years after the exposure. The issue before the Supreme Court of Virginia on summary judgment

was whether the cause of action accrued when the Plaintiff was exposed to the asbestos or whether the cause of action accrued when the Plaintiff was diagnosed with the illness.

The Supreme Court held that the cause of action accrued *"from the date the injury is sustained*. We construe the statutory word "injury" to mean positive, physical, or mental hurt to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded." *Johns-Manville*, 222 Va. at 957, 275 S.E.2d at 904. The court acknowledged the difficulty in dealing with an injury that "does not arise at a specific *point of time*, as does a broken bone; mesothelioma results over a *period of time*, the beginning of the period being unknown." *Id.* at 958, 275 S.E.2d at 905. In the ruling, the court went on to find that the determination of when the hurt occurred depended on the medical evidence. The court, through a proffer, was given evidence that the cancerous tumor develops after the exposure, if at all, and that there is not necessarily any manifestation of harm until some time after the exposure. *Id.* The court held that, given the medical evidence before it, the cause of action accrued when the injury arose. *Id.*

In this case, the matter is before the Court on demurrer, and there is no proffered medical evidence to consider. It is true that the Plaintiffs do seem to believe that the mere inhalation and ingestion of the coal ash has caused them injury. However, in the Amended Complaint, the Plaintiffs further allege that the coal ash was "unknowingly inhaled by the Plaintiffs which caused permanent injuries to the respiratory systems of the Plaintiffs." Pls. Am. Comp. ¶ 18. In addition, they further allege that there has been injury to their pulmonary systems, gastrointestinal systems, reproductive systems, organs of the bodies and tissues, brain damage, and numerous developmental injuries unique to children. . . ." Pls. Am. Comp. ¶ 17. The issue before the Court is whether such allegations are sufficient so as to give rise to a cause of action for negligence. The Court finds that these claims are sufficient to survive a demurrer as they have adequately alleged that the Plaintiffs have suffered injuries. If, during the discovery process, the Defendants learn different facts, then they may raise the issue at another pre-trial motion.

### E. *Constructive Fraud*

At the hearing, the Plaintiff agreed to dismiss the negligent representation claim against Headwaters. Dominion demurred to the claim of constructive fraud, also known as negligent misrepresentation, on the grounds that the elements were not pleaded with sufficient specificity.

Constructive fraud is "a false representation of a material fact that was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Remley*, 270 Va.

at 220, 619 S.E.2d at 321 (citing *Prospect Dev. Co.*, 258 Va. at 86, 515 S.E.2d at 297). The Supreme Court of Virginia has noted that the "essence of constructive fraud is negligent misrepresentation." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998). In addition, "a finding of . . . constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *Id.* (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994)). An allegation of constructive fraud has a heightened standard of pleading, requiring that it must be alleged with specificity. *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978).

The crux of the issue regarding constructive fraud is whether the Plaintiffs were recipients of a false representation and whether they relied on that misrepresentation. The Plaintiffs have certainly pleaded a multitude of misrepresentations, such as one agent's statement that the coal ash was "as safe as dirt." Pls. Am. Comp. ¶¶ 255, 256. An additional issue is causation, as the fraud is alleged to have induced public officials of the City of Chesapeake to approve the development of the golf course with the use of the coal ash. The Plaintiffs seem to argue that if they were aware of the true nature of coal ash, then they would have prevented the City from granting its approval.

A theory of "presumed reliance" or "fraud on the market" has been recognized in cases dealing with securities fraud, but courts have declined to expand its applicability to tort claims. *See e.g., Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1262 (Cal. 2003); *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 474 (Del. 1992); *Holmes v. Grubman*, 691 S.E.2d 196, 200 (Ga. 2010); *Kaufman v. I-Stat Corp.*, 754 A.2d 1188 (N.J. 2000). Plaintiffs' counsel conceded at the hearing that not every Plaintiff heard and relied on a misrepresentation. Given that specificity is required in pleading constructive fraud, the Plaintiffs must all assert that they heard the misrepresentations and personally relied on them. The demurrer as to the constructive fraud is sustained.

## F. *Fraud*

At the hearing, the Plaintiff agreed to dismiss the fraud claim against Headwaters. Dominion demurred to the allegation of fraud on the ground that the Plaintiff had failed to plead, with specificity, the requisite elements of fraud.

In alleging a claim for fraud, the plaintiff must assert six elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto Ins. Co. v.*

*Remley*, 270 Va. 209, 218-19, 618 S.E.2d 316, 321 (2005) (quoting *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 85, 515 S.E.2d 291, 297 (1999)). Just as with constructive fraud, fraud must be pleaded with specificity. *Tuscarora*, 218 Va. at 858, 241 S.E.2d at 783 (1978).

The arguments as to fraud are nearly identical to those previously discussed in regards to constructive fraud. The differing element, that there is an intent to mislead, was sufficiently pleaded in the Amended Complaint, as the Plaintiffs allege that the Defendants knew the dangerousness of the situation and yet chose to advertise it as a positive development instead of a "toxic waste dump." Pls. Am. Comp. ¶¶ 275, 280, 281, 282.

However, as with constructive fraud, the Court cannot ignore that the Plaintiffs have failed to assert that each of them, or even which ones individually, heard the fraudulent statements by the Defendants and relied on those fraudulent statements. As mentioned previously, there is still the significant issue of whether any of the Plaintiffs relied to their detriment on the alleged false statements. Given the specificity requirement when pleading a cause of action for fraud, the Court finds that the Amended Complaint is insufficient and sustains the demurrer.

## G. *Trespass*

Both Defendants demur to the claim of trespass on the grounds that the Plaintiffs have not alleged interference with the possessory interests in the properties and that, even if the properties were invaded, the Defendants were not responsible for the invasion.

In order to state a claim for trespass, the Plaintiff must allege an "unauthorized entry onto property which results in interference with the property owner's possessory interest." *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994). The Plaintiffs must also allege and prove that the invasion "interfered with the right of exclusive possession of the land and was a direct result of some act committed by the defendant." *Spicer v. City of Norfolk*, 46 Va. Cir. 535, 542 (Norfolk 1996).

In support of that position, the Defendants cite to the *Spicer* case in which the Plaintiffs brought a claim alleging that their property had been infiltrated by chemical waste leaching into the groundwater. The court in that case determined that contamination of ground water does not constitute a physical invasion of tangible matter. *Spicer*, 46 Va. Cir. at 543. In the ruling, the court reasoned, "the defendant's act must result in an invasion of tangible matter. Otherwise, there would be no . . . interference with possession. . . ." *Id.* The court further went on to acknowledge that any cases finding trespass by invisible gases or non-visible particles were in actuality cases involving nuisance or negligence.

Another Virginia circuit court has followed the reasoning set forth in *Spicer*. In *Wyatt v. Sussex Surry, L.L.C.*, 74 Va. Cir. 302 (Surry 2007),

the Defendants, who ran a biosolid recycling operation, were alleged to have dumped waste that caused odors and particles and dust to trespass upon the plaintiff's land. The court held that "[a]lthough there is a physical entry, it does not interfere with the exclusive possession of the property" and determined that the demurrer as to the claim for trespass should be sustained. *Id.* at 306.

In contrast to the Defendants' arguments, the Plaintiff asserts that *Akers v. Mathieson Alkali Works*, 151 Va. 1, 144 S.E. 492 (1928), directly addresses the issues at bar. In that case, the Defendant deposited chemical by-products, known as muck, into basins on his property. At some point the basins leaked and then overflowed into a water supply and onto the Plaintiff's property. The court in that case held:

> The defendant had the right to deposit the muck upon its own land, but no right to cause or permit it to flow upon or under and injure the land of the plaintiff. The law requires that every person so use his own property as not to injure the property of another....When defendant permitted the muck to escape from its land and injure land of the plaintiff, without his fault, defendant was liable for the damages sustained by the plaintiff....The loss in such cases must be borne by plaintiff or defendant and it seems just that it fall upon the defendant by whose conduct it was made possible.

*Id.* at 11, 144 S.E. at 495. In that case, although a water supply was infiltrated, there was also physical invasion of the land that interfered with the possessory interest of the owner.

The Plaintiffs in this case have alleged that the toxins leaking into the drinking water and the airborne coal ash have entered onto the Plaintiffs' properties. Pls. Am. Comp. ¶ 286. The Plaintiffs further allege that the Defendants' are the perpetrators of this trespass, and consequently, the Plaintiffs have suffered harm to the value of the property as well as physical injury. Pls. Am. Comp. ¶ 287.

The Plaintiffs have not pleaded the requisite elements of trespass sufficient to meet the burden on a demurrer. Unlike the *Akers* case the Plaintiffs rely on, where the Court found that there was an actual physical invasion, in the case at bar there is no allegation that there has been a physical trespass amounting to an interference with possession. The Court therefore sustains the Defendants' demurrer as to the claim of trespass.

H. *Res Ipsa Loquitur*

The Plaintiff agreed at the hearing that the demurrer as to the claim of res ipsa loquitur should be sustained. The doctrine of res ipsa loquitur is

not a cause of action but an evidentiary presumption. The doctrine applies in cases involving negligence when the "the instrumentality which caused an injury is within the exclusive possession and control of the person charged with negligence, and such person has, or should have, exclusive knowledge of the way that instrumentality was used, and the injury would not ordinarily have occurred if it had been properly used." *Danville Com. Hosp. v. Thompson*, 186 Va. 746, 757, 43 S.E.2d 882, 887 (1947) (citing *George Foltis, Inc. v. New York*, 38 N.E.2d 455 (1941)); *see also Riggsby v. Tritton*, 143 Va. 903, 129 S.E. 493 (1925). The Court sustains the demurrer as to the claim for res ipsa loquitur.

## I. *Battery*

Dominion demurs on the grounds that the Plaintiffs failed to allege the requisite intent for battery and that the Plaintiffs failed to allege an unwanted or offensive touching, or even if there was an offensive touching, that Dominion did not have control of the instrumentality doing the touching. At the hearing, the Plaintiffs agreed that the demurrer should be sustained as to Headwaters.

Battery is an unwanted touching that is neither consented to, excused, nor justified. *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003). Although battery is an intentional tort, there are certain instances where reckless behavior supplies the element of intent. For example, when "one commits a wanton, reckless, and dangerous act, which may result in injury to any one of a number of others, such as shooting into a crowd, he is guilty of assault and battery, though he has no specific intention to injure any particular person." *Bannister v. Mitchell*, 127 Va. 578, 584, 104 S.E. 800, 801 (1920).

The Defendant cites to the case of *Neurology Services v. Fairfax Medical*, 67 Va. Cir. 1 (Fairfax 2005), in support of its position that it did not have the requisite intent to cause an offensive touching. In that case, the plaintiffs leased property that contained asbestos from the defendant. The defendant performed construction work on the site that caused asbestos to be released into the property. The plaintiffs sued the defendants alleging, among other claims, battery for exposure to the asbestos dust. In its opinion, the court stated that "[w]hile the Defendants may have sent the asbestos fibers into the air, the Court finds no 'intent' to 'cause an offensive touching'." *Id.* at 12.

Second, Dominion argues that the claim for battery must fail as the instrument committing the battery — the fly ash in this case — was not under Dominion's control. In support of this argument, Dominion cites to a District Court for the District of Columbia case that analyzed Virginia law in the assault and battery allegation. *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 142-43 (D. D.C. 2005). In that case, the plaintiff was

arrested and detained in the process of boarding an airplane. Agents of the defendant airline requested that the Plaintiff be detained and handcuffed. *Id.* at 143. The Plaintiff alleged that, because he was detained at the request of the airline's agents, the airline committed battery under Virginia law. The Court determined that the airline's agents directing security to detain the plaintiff was not sufficient to sustain a claim for battery as the airline did not have exclusive control over the instrument performing the offensive touching.

In the case at bar, the Plaintiffs allege that the Dominion willfully and recklessly caused the coal ash ingested and inhaled by the Plaintiffs due to their conspiracy in the development of the golf course. As a result, the toxins were "leaching into the ground waters, released into the air, and invading the Plaintiffs' property and person." Pls. Am. Comp. ¶ 296. The Plaintiffs' claim relies heavily on the allegation that Dominion knew the dangers associated with coal ash and that the coal ash deposit in this case would infiltrate the water table and become airborne.

At the hearing, the Plaintiff attempted to distinguish the *Neurology Services* case on the basis that it involved exposure and not an actual touching. Although that case did deal with exposure, the Court dismissed the battery count on the plaintiffs' failure to plead the requisite intent. Even considering that the intent for battery may be that of wantonness or recklessness, the Plaintiffs have failed to adequately allege facts upon which a claim for battery may proceed. Therefore, the Court sustains the demurrer to this count.

## J. *Intentional Infliction of Emotions Distress*

The Defendants demurred to the claim for intentional infliction of emotional distress on the ground that the Plaintiff's made only conclusory allegations in regards to the claim that the conduct was intended to the Plaintiff and that the Defendants' behavior was willful and reckless.

The Supreme Court of Virginia first recognized a cause of action for intentional infliction of emotional distress in *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974). That case set forth the four requisite elements for the claim.

> [A] cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends

against the generally accepted standards of decency and morality. . . . Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Id.* at 342, 210 S.E.2d 145, 148.

The Plaintiffs allege that the Defendants' conduct was willful, reckless, and outrageous in that the Defendant willfully misled the Plaintiffs as to real dangers associated with coal ash in that the Defendants dumped the coal ash without regard to the safety of the Plaintiffs causing the harmful toxins to be released. Pls. Am. Comp. ¶¶ 300, 301. These allegations are in addition to the facts that were alleged generally. The Plaintiffs further allege that they suffered "permanent physical injury" and "emotional distress, sleeplessness, nausea, headaches, fright, nervousness, revulsion, dread of the future. . . ." Pls. Am. Comp. ¶ 301.

A claim for intentional infliction of emotional distress is not favored by the law. *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991). The Plaintiff's physical injuries in this case are identical to those claimed in *Russo*: sleeplessness, nausea, headaches, fright, nervousness, and dread of the future. *Id.* at 28, 400 S.E.2d at 163. As the Court in that case stated, "there is no claim, for example, that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income . . . the alleged effect on the Plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Id.*

Absent in this case are the allegations that the Defendants' conduct was intentionally directed at those Plaintiffs suffering alleged symptoms or that the conduct was so reckless and wanton that the Defendants intended the harm to the Plaintiffs by their willful acts. In every case of intentional infliction of emotional distress reviewed by the Supreme Court of Virginia, the defendant was aware of the plaintiff's existence when acting. The Court finds that, as alleged, that is not in the case at bar and sustains the demurrer.

## K. *Negligent Infliction of Emotional Distress*

In contrast to intentional infliction of emotional distress, negligent infliction of emotion distress is the result of emotional distress arising out of negligence and not an intentional act. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 137-38, 523 S.E.2d 826, 831 (2000). In addition, in order to recover for negligent infliction, the emotional distress must be accompanied by a physical injury, in fact, there must be a "clear and unbroken chain of causal connection between the negligent act, the

emotional disturbance, and the physical injury." *Id.*; see also *Bell v. Kirby*, 226 Va. 641, 645-46, 311 S.E.2d 799, 802 (1984).

The Defendants demur to the claim for negligent infliction of emotional distress on the basis that the Plaintiffs did not plead facts sufficiently to establish an injury. Such facts regarding the physical injury must be pleaded with specificity. *Delk*, 259 Va. at 138, 523 S.E.2d at 834. In *Delk*, the Court held that an allegation that the Plaintiff suffered "severe mental, emotional, and physical trauma" was not sufficiently specific to sustain a claim for negligent infliction of emotional distress. *Id.*

In this case, the Plaintiffs alleged that they suffered "permanent physical injury and further were caused to suffer emotional distress, sleeplessness, nausea, headaches, fright, nervousness, revulsion, dread of the future. . . ." Pls. Am. Comp. ¶ 307. Such allegations are not sufficient in pleading a cause of action for negligent infliction of emotional distress. The Court sustains the Defendants' demurrers as to the claim for negligent infliction of emotional distress.

## L. *Conspiracy*

The Defendants in this case demur to the Complaint on the ground that the Plaintiffs failed to plead a concerted action by the Defendants and that the Defendants were engaged in an unlawful act.

The Plaintiffs allege a conspiracy against the Plaintiffs by all of the Defendants. A conspiracy "must be a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Werth v. Fire Companies' Adjustment Bureau, Inc.*, 160 Va. 845, 855, 171 S.E. 255, 259 (1933), *cert. denied*, 290 U.S 659 (1933). In order for the claim to continue, the Complaint must allege both the conspiracy and the underlying intentional act. *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997); *Witcher v. Reid*, 70 Va. Cir. 415, 418 (Norfolk 2006).

It is clear that, in order to establish a claim for conspiracy, that there must be an underlying criminal or unlawful act. In this case, the Plaintiffs based the unlawful act on the fraud and misrepresentations perpetrated by the Defendants in the planning and development of the golf course. If the underlying tort survives the demurrer, then the conspiracy claim may be based on that alleged unlawful act. *Hechler Chevrolet, Inc. v. General Motors Corp*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). However, the Court has already ruled that the demurrer to the fraud and constructive fraud counts is sustained. On the face of the Complaint, the Plaintiffs have based the claim for conspiracy on the fraud or constructive fraud actions. With those causes of action dismissed from the claim, the Court must sustain the Defendants' demurrer.

The Court will note that the only other intentional unlawful acts that are contained in the Complaint are the battery count, which has also been dismissed on demurrer, and the intentional infliction of emotional distress claim. The Supreme Court of Virginia has clearly held that a conspiracy claim may not be based on an intentional infliction of emotional distress allegation. *Almy v. Grisham*, 273 Va. 68, 81, 639 S.E.2d 182, 189 (2007). As stated, the demurrer as to the claim of conspiracy is sustained.

## Conclusion

To the extent that the Court has sustained the demurrers to most of these counts, the Court grants the Plaintiffs leave to amend the Complaint within thirty days from the date of this opinion.